Wheeler, J.
Two grounds are relied on for reversing the judgmont. The first has reference to the charge of the court in defining the constituents of murder in the first degree; the second is the refusal of the court to grant a new trial.
After quoting the statutory definition of murder, the court proceeded to define and explain the necessary constituents of the crime at common law, and of the degrees of murder created by the statute, as follows:
“1st. The killing must be unlawful, without warrant, excuse, or provocation.
“2d. The killing must have been with malice aforethought. Malice, as essential to the crime of murder, is used in a legal sense as contradistinguished “from its popular signification. In this offense malice need not denote spite “or malevolence, hatred,or ill-will to the person killed; nor that the person “killing did kill another in cold blood, as with a settled design and premeditation. Sucli a killing would, it is true, he murder. But malice, as essential “to the crime of murder, has a more extended meaning. A killing-, flowing “from any evil design in general, may be of malice, and constitute murder; as “a killing resulting from the dictates of a wicked, depraved, and malignant “spirit; a heart regardless of social duty and fatally bent upon mischief may “he-of malice, necessarily implied by law from the fact of killing without law“ful excuse, and sufficient to constitute the crime of murder, although the “person killing may have bad no spite or ill-will towards the deceased. Malice “as thus described is either express or implied. Express malice is where one “ with a sedate and deliberate mind and formed design kills another, which “formed design is evidenced by external circumstances discovering that in“ward intention, as where a person kills another by starving, torture, or “hv any other premeditated and deliberate killing, as by lying in wait, ante- “ cedent menaces, former grudges, and concerted schemes to do bodily harm; “or any other circumstances showing such deliberation and formed design “ to kill would be equally available to show express malice, as the examples *247 “ above given. The intention of the person killing is the gist of the offense, in “ case of killing upon express malice, which intention, unless the killing is by “starving or torture, is a question of fact for the jury, and is to be gathered ■“from all the circumstances attending the transaction.
“Implied malice is malice presumed by law from the commission of any “ deliberate and cruel act, however sudden, done or committed without any “ just cause, or excuse, as when the act has been committed under such circumstances as are the ordinary symptoms of a wicked, depraved, and malignant “spirit, of a heart regardless of social duty and fatally bent on mischief, as 41 above mentioned. If an act has been accompanied by such circumstances “the law presumes malice, and it is not necessary that the jury find the malice “as a substantial fact.
“Asa general rule the law presumes malice from the very fact of killing, and “ all the circumstances of necessity, accident, or infirmity which justify, ex- “ cuse, or extenuate the act are to be proved by the prisoner, unless they arise “ out of the evidence against him. .
“Here we might rest the definition of murder had not our legislature introduced an important distinction to be understood by the jury in the formation “of your verdict, provided you shall find the prisoner guilty of murder. This 41 distinction is with regard to the degree of guilt of which a party maybe conducted and the corresponding punishment to be inflicted. The statute reads “ as follows: ‘ That all murder committed by poison, starving, torture, or other “ ‘ premeditated and deliberate killing,’ &e., ‘ is murder in the first degree, and “ ‘all murder not of the first degree is of the second degree.’
“ If a murder be committed by poison, starving, or torture, it is murder in the 41 first degree, without further proof of malice, or that the death of the party was “the object sought by the will, deliberation, and premeditation of the party “killing. But the words ‘other premeditated and deliberate killing’ need “ some explanation.
“ A killing showing such premeditation and deliberation is equally ■“murder in the first degree,'but proof is necessary to show that such killing “ was the ultimate result which the will, deliberation, and premeditation of the “party accused sought.
“ The intention of the accused determines the degree of the offense. If the “homicide is premeditated, if there is a specific intention to take life, and life “is actually taken, it is murder in the first degree; if there is not a specific “ intention to take life, it is murder in the second degree.
“If a mortal blow is malicious and death ensue the perpetrator is guilty of “murder, whether it be intended to kill or not — he is responsible for the effects “ of such wilful and malicious blow although he did not intend to kill — but in “ such case he is only guilty of murder in the second degree. But if such blow 41 be intended to kill he is guilty of murder in the first degree.
“It is not, however, absolutely necessary to couvict of murder in the first “ degree to show a previous intention and premeditation to take life uncon“nected with or preparatory to the commission of the act producing death. “Such premeditation and intention may be gathered from the nature of the “act itself whenever such act, unexplained, shows deliberation, as where a man ‘‘without any cause deliberately shoots another, or by any other act producing 41 death without cause.
“If the design to take life be but the conception of a moment it is as deliberate, so far as judicial examination is concerned, as if it were the plan of “years, or if the party killing had time to think, and did intend to kill, for a “ minute as well as an hour or day, it is a deliberate, wilful, and premeditated “killing, constituting murder.in the first degree.”
It is objected to this charge that it excludes from the definition of murder in ¡the first degree the ingredient of deliberation, or that, at least, it makes the degree of guilt in too great a measure dependent on the intention with which the act causing death was committed rather than the premeditation *248 which preceded its commission, attaching too much consequence, it is said, to tlie intention and too little to the deliberation necessary to constitute murder in the first degree. And to support tlie objection especial reference is made to that part of the charge which defines what are tlie constituents of murder in the first degree. It is to lie observed, however, that it is there expressly stated that to constitute murder in tlie first degree in other than the cases instanced in the statute “proof is necessary to show that such-killing was the ultimate “ result which the will, deliberation, and premeditation of'the party accused “sought.” Tims the ingredients of murder in the first degree are made necessarily to consist of a wilful, premeditated, and deliberate killing. Tlie language employed imports that there must have been a preconceived intention and deliberate purpose which “sought” the deatli of the party slain. Again it is said : “The intention of tlie accused determines tins degree of the “offense. If,the homicide is premeditated, if there is a specific intention to “take life, and life is actually taken, it is murder in tlie first degree; if there “ is not a specific intention to take life, it is murder in tlie second degree. If a “ mortal blow is malicious and deatli ensues the perpetrator is guilty of murder, “whether it he intended to kill or not — lie is responsible for the effects of such “ wilful and malicious blow although ho did not intend to kill — but in such case “he is only guilty of murder in the second degree. But if by such blow he “intended to kill he would be guilty of murder in tlie first degree.”
What the court intended in this branch of the charge evidently was to point out the distinction between a wilful and malicious killing, or, as it had been before expressed in giving filio meaning of express malice, a killing “with a “sedate and deliberate mind, and formed design,” a premeditated and deliberate killing,” that is, a killing upon express malice, as necessary to constitute murder in tlie first degree, and a malicious killing hi which the intention of the party was not to take life, but to inflict some less injury, or wliieli was <perpetrated in tlie commission of some wilful, deliberate, and unlawful act, evincing a wicked, depraved, and malignant spirit, but not with the intention to take the life of the .party slain, that is, a killing from which the law will imply malice, which would be murder iu tlie second degree. It was to draw the distinction between those cases where the mortal blow was given with the preconceived, deliberate intention to take life and where there was not such specific intention in tlie mind of the party when lie perpetrated tlie deed, and particularly to distinguish the degree of guilt between a wilful, premeditated and deliberate act which was intended to cause death and one which was not.
That this is the plain meaning of this branch of the charge is evident as well from what preceded as from what follows in immediate connection with the extract last given, where it is added: “It is not, however, absolutely neces- “ sary to convict of murder in tlie first degree to show a previous intention and “premeditation to take life unconnected with or preparatory to the commission of tlie act producing deatli. Such premeditation and intention may be “ gathered from the nature of the act itself whenever snch act, unexplained, “ shows deliberation, as where a man without any cause deliberately and coolly “shoots another.”
Here the idea is distinctly brought to view that, though it Is not absolutely necessary to show, that is, 'for the prosecution to prove by other evidence than is furnished by the act itself, the existence of a preconceived intention without cause to take life, or premeditation and deliberation preceding tlie act; yet, that these ingredients must have existed in fact to constitute murder in the first degree. They need not he expressly proved as distinct and independent facts, but their existence “may he gathered (that is, inferred) from tlie nature “of the act itself whenever such act, unexplained, shows deliberation.”
*249 It is implied as plainly as if again expressed that premeditation and deliberation are necessary constituents of murder in the first degree.
Particular attention was directed to tlie “specific intention” with which the mortal blow was given in order to convey the idea that it must have been to-lcill, and not merely to inflict chastisement or other injury less than death. The preconceived intention must have been specifically to take life; the death of the party slain, and not another, and not merely a beating, wounding, or other injury short of the death of the party must have been specially iutended. It is this specific intention, actuating the party at the moment of perpetrating the-deed, and not the time or manner of its manifestation, which characterizes the degree of guilt. If such was the intention, it is not essential at what time or in what manner it was made manifest; whether by antecedent words or acts, or only in the very act which occasioned the death.
But the idea is kept plainly in view that the homicide must have been “premeditated ” and “without any cause; ” that is, any sufficient provocation, legal excuse, or extenuation; “coolly,” that is, deliberately, “as (the instance given), “where a man without any cause deliberately and coolly shoots another.” There must have existed the pre-conccived intention and cool (deliberate) purpose. It may be shown, however, by proof of antecedent words or acts evincing sueli intention; or it may be inferred from tlie nature of tlie act itseif, where it is perpetrated in cold blood and under such circumstances as to show that nothing short of taking the life of tlie party assailed could have been intended; as in the instance given whore a man under the circumstances stated shoots-another. Such an act unexplained would he evidence of itself of the pre-con-ceived intention and deliberation necessary to constitute murder in tlie first degree'. It would be deemed a premeditated and deliberate killing, though-there was no other evidence of the intention, which thus first manifested itself, or of deliberation; for in such a case it is only from tlie act that wo can judge of the intention, and from tlie absence of apparent provocation we must infer delibera! ion. Upon every principle by which we judge of human actions,, we must conclude that the party thus killing was aware of the certain consequence of his act, and that it was tlie result of a preconceived, deliberate purpose.
While seeking to impress the idea of the inteution necessary to constitute this degree of crime, the court, as well might be, assumed that the necessity of premeditation and deliberation, before so fulljr expressed in giving the definition of express malice and the degrees of murder, was understood by tlie jury; and so'iu treating successively of each ingredient in the crime. One sentence or paragraph was not sufficient to convey all tlie, information desired, ancl hence the several ingredients necessary to complete the definition wore severally treat eel in tlie charge. It would lie contrary to every principle of just reasoning, as well as of judicial interpretation, to judge of the meaning of the court by selecting and disconnecting from tlie charge'particular sentences and considering them without reference to the context. Such, certainly, would not be tin''natural method of arriving at the meaning of the court, and we cannot suppose ic was adopted by the. jury in this casó. The idea is more than once expressed with perfect distinctness, and it is kept plainly in view throughout that there must lie a premeditated and deliberate killing to constitute murder ill tilt' first degree. These constituents of the crime were not repeated in express terms in every Sentence or paragraph, nor was this, if even practicable, necessary to its being understood.
Upon an attentive consideration of the charge it is not perceived that there is any cause to apprehend that tlie jury did not understand its meaning, or that they were misled by its reference to tlie specific intention as a necessary constituent on the definition of the crime. Hor is tlie charge, it is conceived,, obnoxious to the objection that it excludes from the definition, or attaches too-little consequence to deliberation as necessary to constitute murder in the first degree.
*250 Is there error in the charge in respect to the lapse of time for premeditation and deliberation whieli must intervene between the conception of the deadly purpose and its execution? And to this inquiry it must be answered ‘that no certain space or period of time could be assigned for such purpose as matter of law, for the law fixes none. Every case must be judged of by its own circumstances. As lias- been said by a learned judge whose opinion lias been referred to in argument, “It would be a most difficult task for human 41 wit to furnish any safe standard in this particular.” (Wharton’s Am. C. L., 200.) The law has not and in the nature of the case it cannot fix any safe tiud certain criterion by which, as an invariable rule, to determine the length of time which shall he sufficient in this respect. All it can do is to define the constituents of the crime with such precision and certainty of meaning as language will convey, and leave it to the jury to decide whither the facts of the particular case bring it within the definition. It lias declared that the killing must he “ deliberate,” that is, (to adopt the definition given of the meaning of the words by the Supreme Court of Tennessee,) “with cool purpose,” and 41 premeditated,” that is, “a design must be formed to kill before the act by “ which death is produced is performed.” (Anthony v. The State, Meigs’ R., 277.) But it does not require that design to have existed for any certain or ■definite space of time. So far as concerns judicial examination, or inquiry on this point as a mere question of time, aside from cause or provocation,' the question is not what, length of time elapsed between the conception of the design and tlie ¡jet, but diet the preconceived intention and cool deliberate purpose exist at the moment of the commission of the act; and this, as we have said, is a question which must he determined in eacii ease by its own circumstances. It may be said, therefore, (though it may not be the most intelligible form of submitting the proposition to the apprehension of a jury, that (excluding of course the idea of provocation and passion, which do not admit of filie deliberation,) the existence of the preconceived intention for one period of time is, in a legal point of view, and so far as judicial examination is concerned, as deliberate as if it had existed for any different or greater period. This, of course, is to he understood of a case in which there is deliberation, where the act is done with cool purpose, which excludes the idea of provocation and passion, or when; in the language of the charge the killing is “ without any cause,” that is, where it is not alleviated, excused, or extenuated by any sufficient legal cause or provocation.
It is not necessary and we are disinclined to comment upon the facts in evidence, or to examine the testimony for the purpose of showing its sufficiency to support the verdict. It may suffice to say, that after an attentive consideration of it in this view, we are of opinion that it is legally sufficient; that if the witnesses were entitled to credit — and of this the jury were the exclusive judges — there was premeditation and deliberation sufficient to warrant the verdict in the view we entertain of the true intent and meaning of the statute, -and iu the view of the law which lias been announced and maintained by courts in other States upon statutory provisions similar to our own. And here it may be remarked, that while our statute changes the common law and divides murder into two degrees, differing in guilt and punishment, it does not introduce any new principle into the law respecting this degree of murder, as it has been ascertained and settled in other States upon statutes employing the same words and conveying the same meaning.
The record contains the charge of the court at length as reduced to writing under the requirement of the recent act of the legislature. It embraces much matter not applicable to the evidence in this case, and which it is not necessary to revise or to notice in the opinion.
2. It is insisted that a new trial was improperly refused on the ground that the accused was taken by surprise by the testimony of two of the witnesses, .and that the testimony of one Walton was not admitted to impeach their ■credibility by showing that one of them had made a different statement *251 out of court from that in which they concurred on the trial. In support of the application there were the affidavits of the accused and Walton, tiie former stating- the surprise, and that he was informed that one Stripling, who resided sixteen miles distant could, upon another trial, identify tiie witness who made the statement to Walton, and Walton’s affidavit, giving- the statement which he said one of tiie witnesses, hut he could not tell which, made in liis hearing.
Upon this application it is to he observed that it does not appear by the record that Walton was offered as a witness upon the trial, or that his testimony was proposed and rejected, nothing of (lie kind is presented by the record. (This court cannot, notice the mere statements of counsel made in their motion for a new trial.) Tiie question of tiie admissibility of his testimony, therefore, is not before us in a manner to warrant an authoritative revision. The rule of law, however, seems i o be that, in order to admit proof that a witness has made statements out of court contrary to what ho lias testified on tiie trial, it is necessary first to ask him as to the, time, place, and person involved in tiie alleged contradiction, and before offering to prove his supposed contradictory statements, to ask him, upon cross-examination, whether or not he has made the statements proposed to be proved. (1 Greenl. Ev., sec. 402, 2d edit.) Nothing of the kind appears to have been done or proposed in the present case.
The alleged surprise and the materiality of the testimony of Stripling rest alone on tiie, unsupported affidavit of the accused. Neither the affidavit of the witness whoso testimony was sought nor that of the person who communicated the information was produced. It is easy to perceive that if the affidavit of the party alone and unsupported would afford sufficient legal ground for awarding a new trial, and would authorize this court to reverse the judgment in case of its refusal, it would he no difficult task to lay the ground of a reversal in every case where a new trial is refused.
The District Court must exercise a certain discretion in the granting or refusing of new trials. In considering the motion the court may judge not only of the competency hut of the effect of evidence. There may be cases where the court might weli grant a' new trial if, in the opinion of the presiding judge, injustice had been done; while, at the same time, should a new trial he .refused, this court would not be warranted in reversing' the judgment. The judge who presides at the trial is afforded much bettor and more ample means of judging of the merits of the application than the revising court can he. And therefore it is the governing rule of the action of this court, affirmed and enforced by repeated decisions from the earliest cases upon the subject to the present time, not to reverse the judgment of the District Court refusing a new trial unless some principle of law has been violated, misconceived, or disregarded to tiie prejudice of the party, or there is good reason to apprehend that injustice has been done in refusing the application. Though the District Court iu its discretion upon the application of the accused might have granted a new trial if, from the evidence and circumstances of the ease, as they were apparent to the presiding judge, in his opinion the ends of substantial justice required it, yet, from anything before us in tiie record, we cannot say that any principle or rule of law has been infringed or injustice done.
That the application for a ncw'lrial did not come within any rule of law authorizing a reversal of the judgment on account of its refusal, and that it was manifestly insufficient for that purpose, will be apparent by a reference to the rules which govern the granting' of new trials’iu similar cases, collected in "Wharton’s American Criminal Law and the authorities there cited. (Chap. 4, p. 659, 661, 664, 670.)
Upon an attentive consideration of the questions of law presented and the ■evidence in the case, we conclude that there is no error in the judgment and .that it must he affirmed.
Judgment affirmed.
Note 87. — Harrell v. Hill, 15 T., 270; Shaw a. The State, 27 T., 750.