Syllabus.

## Lewis Murray v. The State.

1. **Continuance.**—An application for a continuance stated that the subpœna for the absent witness was not served, owing to his removal from the county, but failed to show that the subpœna had been lodged with, or returned by, an officer. *Held*, that the application was defective; for aught it shows, the accused may have retained the subpœna in his own possession.

2. **Murder—Charge of the Court.**—On a trial for murder it was proved that the accused and the deceased had a quarrel on the day of, but some time prior to, the killing, and the court charged the jury to convict the accused of murder in the first degree if they believed from the evidence that the interval between the quarrel and the killing was sufficient for passion to subside and reason to resume its sway. *Held*, that the charge was erroneous, because, in effect, it withdrew from the jury any fresh provocation or other circumstances which may have transpired at the time of the killing.

3. **Same.**—If fresh provocation intervened between preconceived malice and the death, it will not be presumed, but may be proved, that the killing was on the antecedent malice.

4. **Same.**—If death ensues from the voluntary use of a deadly weapon in a manner calculated to kill, the law will infer an intention to kill, but will not, therefore, presume the killing to be murder upon express malice, which is a constituent of murder in the first degree, and which must be proved *aliunde*, and, like other facts in the case, by evidence sufficient to convince the jury of its existence.

5. **Reasonable Doubt as between the Degrees of Murder.**—In trials for murder the law of reasonable doubt should be charged to the jury, not only upon the general question of the guilt or innocence of the accused, but also as between the different degrees of culpable homicide, so as to accord him the benefit of such a doubt as between a greater and a less degree.

6. **Murder—Alternative Penalty.**—By the Constitution of 1869 juries in capital cases were empowered to substitute imprisonment with hard labor for life in lieu of the death penalty. *Held*, that this provision made such imprisonment an alternative penalty for capital felonies committed while that Constitution remained in force.

7. **Same.**—Though the Constitution of 1876 contains no similar provision to that above referred to, yet it cannot be held to have abrogated that provision with respect to capital felonies perpetrated while the Constitution of 1869 was in force, inasmuch as such a construction would make the Constitution of 1876 obnoxious, in such cases, to the prohibition contained in

27

the Constitution of the United States of *ex post facto* enactments by the states.

8. SAME—CHARGE OF THE COURT.—Being on trial for a murder committed while the Constitution of 1869 was in force, notwithstanding the trial was had since the abrogation of that Constitution, it was the right of the accused to have the jury instructed that, in case they convicted him of murder in the first degree, they could substitute imprisonment at hard labor for life in lieu of the death penalty; and in such cases it seems that the omission of the court to give such a charge to the jury, whether asked to do so or not, would be error fatal to a conviction of murder in the first degree.

9. SAME—VERDICT.—Trying an indictment for a murder committed while the Constitution of 1869 was in force, the jury returned a general verdict of guilty of murder in the first degree, without assessing any punishment. *Held,* that in point of form the verdict was good; but, if the jury had seen fit to substitute imprisonment at hard labor for life in lieu of the death penalty denounced by the Penal Code, it would have been necessary that their verdict should have so shown.

APPEAL from the District Court of Walker. Tried below before the Hon. W. D. WOOD.

The indictment charged that the appellant, together with Joe Clark, Alfred Shackleford, and Reed Sheilds, did, on the 15th of February, 1876, kill and murder Nero Spivey, by beating and mortally wounding him with sticks, etc.

It appears from the evidence that the difficulty arose out of the election held on the day of the killing—the accused charging the deceased with having voted the Democratic ticket, and, a quarrel ensuing, the parties went out of the corporation of the town of Huntsville, and a fight ensued between the accused, upon the one side, and the deceased and his brother on the other. Inferentially it appears that all parties were freedmen. According to the evidence for the state, the difficulty was raised and the fight precipitated by the parties accused for the purpose of punishing the Spiveys for voting the Democratic ticket. During the fight the fatal blow was struck, according to the evidence, by the appellant, Murray.

The opinion of the court states all facts material to a clear understanding of the rulings.

*James R. Burnett*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J.   The appellant in this case was indicted, conjointly with several other parties, for the murder of one Nero Spivey.   The indictment charges, and the evidence establishes, that the homicide was committed on the 15th day of February, 1876.   On the 24th day of April, 1876, the case coming on for trial, the defendants claimed a severance, and the appellant was placed first upon trial, at the election of the prosecuting attorney.   He presented an application for a continuance, which was overruled, and he saved his bill of exceptions.

The trial resulted in his conviction, the verdict returned being : " We, the jury, find the defendant guilty of murder in the first degree."   A motion for a new trial and in arrest of judgment having been overruled, the defendant appeals to this court.

We may summarize the grounds relied on by the appellant for a reversal of the case under the following heads, viz. :

1st.  The refusal of the court to grant defendant's application for a continuance.

2d.  The errors committed by the court in certain subdivisions of the charge to the jury.

3d.  The refusal of the court to give in charge to the jury the special instructions asked in behalf of defendant.

4th.  That the court erred in rendering judgment on the verdict returned by the jury, the verdict being defective because it assessed no penalty whatever against defendant.

We propose to discuss these several propositions *seriatim.*

1st. The application of defendant for a continuance was not sufficient. It states that he caused a subpœna to be issued for the witness Mack Bailey, for the want of whose testimony the continuance was sought, and that said subpœna was not served owing to his (witness') removal from the county. The application fails to show that the subpœna was ever placed in the hands of, or that it was returned not served by, the proper officer. For aught that appears, the party may have procured the issuance of the subpœna and then retained it in his own possession. *Cocker* v. *The State*, 31 Texas, 500; *Henderson* v. *The State*, 22 Texas, 595; *Townsend* v. *The State*, 41 Texas, 134; *Murray* v. *The State*, decided by this court at the Austin term, 1876, *ante* p. 174; *Rice and Dill* v. *The State*, and *Cantu* v. *The State*, decided at the present term of this court, *ante* pp. 278, 402.

2d. The paragraphs of the charge of the court which are objected to as erroneous are those which are numbered respectively 7, 8, and 15. The 7th subdivision of the charge is in these words: "Although you may believe that defendant and deceased, or others, had a quarrel on the day of the killing, which may have at the time excited defendant and rendered his mind incapable of reason and calm reflection, yet, if you further believe from the evidence that sufficient time elapsed, between the happening of such quarrel and the time the fatal blow was given, for passion to subside and reason to resume its sway, then you will find the defendant guilty under the 4th clause of this charge." The 4th clause defined the constituent elements of murder in the first degree.

The objection to this charge, we think, was well taken. The charge, in effect, made the guilt of defendant to depend alone upon the isolated fact that, between any previous difficulty the parties may have had during the day and the blow which occasioned the death of the deceased, there was sufficient time for the mind of defendant to have become

calm and sedate, without giving the jury the right to inquire into the circumstances immediately connected with and surrounding the parties at the time of the killing. The circumstances which transpired at the time of the killing were thus in a manner withdrawn from the consideration of the jury, and the guilt or innocence of defendant was made to depend upon the ideas the jury might entertain relative to the lapse of time sufficient for an excited and angry mind and temper to overcome its passion, and for reason to resume its sway, after they had become excited and aroused by a difficulty which may perhaps have occurred hours before.

If the court felt called upon to charge the jury in reference to any antecedent difficulty between the parties, then the proper instruction should have assimilated the rule laid down by Chief Justice Roberts in *McCoy* v. *The State:* "1st, that, when a fresh provocation intervenes between preconceived malice and the death, it will not be presumed that the killing was upon the antecedent malice; 2d, that, though not to be presumed, it may be proved to have actuated the person in the killing by the circumstances and facts in the case, notwithstanding the fresh provocation." 2 Starkie, 712; *Commonwealth* v. *Jones*, 1 Leigh, 612; *McCoy* v. *The State*, 25 Texas, 43.

The 15th paragraph or subdivision of the charge is in these words: "Every man is presumed by law to intend the natural results and consequences of his acts, and when one uses an instrument calculated to produce death in a way to produce such a result, the law presumes that the party intends to kill." The proposition thus enunciated was the law when abstractly considered, for we find it substantially expressed in our statute, as follows: "The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act." Pasc. Dig., Art. 1654.

"A man is always presumed to intend that which is the

necessary, or even probable, consequence of his acts. However sudden the killing may be, if the means used or manner of doing it, or other external circumstances attending it, indicate a sedate mind and formed design to kill or do great bodily injury, and a murder be committed, it will be upon express malice. 1 Hawk. 96, sec. 23. In such case, if it appeared that the means used was likely to kill or do great bodily harm, endangering life, and a killing took place, the natural inference would be that it was upon express malice, unless it was attended with such circumstances as showed an absence of such formed design, or as showed the act to be the result of an indeliberate, rash, sudden impulse or passion." *Whiteford* v. *The Commonwealth*, 6 Rand. (Va.) 723; *McCoy* v. *The State*, 25 Texas, 42; *Hill's Case*, 2 Gratt. (Va.) 594; *State* v. *Smith*, 2 Strobh. (S. C.) 77; *Jordan* v. *The State*, 10 Texas, 479.

Moore, J., in the case of *Farrer* v. *The State*, says: " It is a familiar axiom that every one is presumed to understand the probable result of his act. And when an unlawful act is clearly shown to have been done, it is for the defendant to show facts which mitigate, excuse, or justify it, so that a reasonable doubt, at least, may arise on the entire evidence in the case as to his guilt. Hence, when the killing is not shown to have been done under sudden passion, induced by adequate cause, or under circumstances which excuse or justify it, such killing must be regarded as voluntary and designed, and, therefore, with the malice which the law imputes to such homicide.     *     *     *     But while the law implies malice on proof of voluntary homicide, it does not impute express malice. This is an inference, not of law, but a question of fact, consisting of intention dependent upon the state of the mind. And, to warrant a conviction of murder in the first degree, it must be proved, like any other fact in the case, by such evidence as is reasonably sufficient to satisfy the jury of its existence." 42 Texas, 272.

Subjected to the tests of the principles of law established in the foregoing authorities, the charge as quoted, while it announced the law as far as it went, was still defective and calculated to mislead the jury, in that it did not further explain that, though the intention to kill would be presumed under the circumstances indicated, yet the homicide would not be presumed to be murder upon express malice, but that express malice, which was the essential constituent of murder of the first degree, must be proved *aliunde*, like any other fact in the case, by such evidence as might be reasonably sufficient to satisfy and convince the jury of its existence. See, also, *O' Connell* v. *The State*, 18 Texas, 344.

3d. As to the special instructions asked in behalf of defendant, whilst they in the main presented propositions in themselves correct, still we cannot say that the court committed an error in refusing to give them as a whole, when considered in reference to the substance and sufficiency of the general charge given, and to their applicability to the facts elicited by the evidence. We shall, therefore, only notice them in a general manner, as presenting a question of practice not hitherto, so far as we are informed, definitely and conclusively settled by previous decisions in this state.

This question is as to the propriety and necessity of a charge upon the reasonable doubt between the different degrees in cases of murder, especially when such a charge is asked by defendant. There are, as it appears to us, many good reasons why this rule should be adopted. Oftentimes it is of as great and vital importance to a defendant to have the benefit of whatever reasonable doubt may arise in determining the grade and degree of his crime as in adjudging the general measure of his guilt. In searching the decisions of our supreme court we find that such a charge was given by the Hon. Peter W. Gray in *Monroe* v. *The State*, 23 Texas, 210, and the charge was approved in that particular by the court. In *Villareal* v. *The State*, 26 Texas, 107,

the Hon. Thomas J. Devine gave a charge of a similar character, and the court commended the fairness of the charge in that regard.   And in *Guagando* v. *The State*, 41 Texas, 634, the court say : " While the charge of the court, on the trial under the indictment for murder, presented the law of the case, arising from the facts in evidence, in clear and forcible terms, and on the question of a reasonable doubt directed an acquittal, it yet omitted to call the attention of the jury to the fact that, although satisfied from the evidence of defendant's being guilty of murder, yet if a reasonable doubt existed as to the crime being murder of the first or murder of the second degree, that the accused would be entitled to the benefit of such doubt, and should be found only guilty of murder in the second degree."

Considered in the light of these authorities and the facts adduced on the trial, we think the court should have given the 1st special instruction asked by the defendant, which was expressed in these words :  " To convict the defendant of murder of the first degree the evidence must satisfy you, not only that he was the guilty agent in inflicting death, but it must also satisfy you that, at the time of the killing, 1st, that the defendant's mind was sedate, or cool and unruffled, and deliberate ; and, 2d, that at the time there existed in his mind a formed design to inflict upon him, by an unlawful act, some serious bodily harm, which might probably end in depriving him of life, and the existence of such sedate, deliberate mind and formed design must be established by the evidence, and beyond all reasonable doubt."

The 8th paragraph of the charge to the jury, which is also complained of, is as follows :  "If you find the defendant guilty of murder in the first degree, you will say so, and no more."

The objection to this charge is that it is obnoxious to section 8, of Article 5, of the Constitution of 1869, which, it is insisted, provided the rule for fixing the character of

the punishment. That section is thus written: "In the trial of all criminal cases the jury trying the same shall find and assess the amount of punishment to be inflicted, or fine to be imposed, except in cases where the punishment or fine shall be specifically imposed °by law; provided that, in all cases where by law it may be provided that capital punishment may be inflicted, the jury shall have the right, in their discretion, to substitute imprisonment to hard labor for life."

Without entering into anything like a minute statement of the facts of the case, we deem it necessary, in order to a proper appreciation and understanding of the question raised by this objection, and in several other different modes in the record, to present the substance of the prominent features of the case bearing upon it, which, to say the least, make the question no less novel than it is important.

The murder of which this defendant was charged, tried, and convicted was committed, it will be remembered, on the evening of the 15th day of February, 1876. On that day an election was held by the people throughout the state to adopt or reject a new Constitution for the state. The result of that election was the adoption of the new Constitution by an overwhelming majority of the popular vote. By the ordinance submitting this Constitution to election by the people it was provided that, "if a majority of all the votes cast at said election, and returned to the secretary of state, shall be in favor of ratification, the governor shall, within five days next succeeding the return day, issue his proclamation declaring the fact, and then the new Constitution shall, on the third Tuesday in April, 1876, become and thereafter be the organic and fundamental law of the state."

Pursuant to this ordinance the present Constitution became the fundamental law of the state on the 18th day of April, 1876, and, consequently, was in full force and effect when this case was tried in the lower court. This new Consti-

tution, superseding as it does the Constitution of 1869, contains no provision similar to section 8, Article 5, of the latter. Nor does it contain any provision governing the subject, further than it may be comprehended in section 48 of the General Provisions (Art. XVI), as follows: " All laws and parts of laws now in force in the state of Texas, which are not repugnant to the Constitution of the United States or to this Constitution, shall continue and remain in force as the laws of this state until they expire by their own limitation, or shall be amended or repealed by the legislature."

But there was and is no law upon our statute books conferring upon juries the right, in capital felonies, to substitute imprisonment for life for the death penalty. The question then is—the old Constitution having been superseded and the new one being wholly silent, and there being no statute authorizing such a charge—should the judge have charged the jury that, if they found the defendant guilty of murder in the first degree, then they might, in their discretion, substitute imprisonment for life instead of the death penalty imposed by statute?

It is insisted that he should have done so because, at the date of the commission of the murder, the Constitution of 1869 was in force, and that it, and not the Constitution of 1876, which prevailed at the trial, furnished the rules regulating the punishment; that to hold otherwise would be running counter to the Constitution of the United States, which prohibits the states from passing *ex post facto* laws (sec. 10, Art. 1, Const. of the United States) ; and that the effect would be the same, to hold or permit the old law to be repealed by implication, as would result from the passage of an act expressly repealing it.

In behalf of the state it is contended that the punishment for murder of the first degree, under our law, is death (Pasc. Dig., Art. 2271) ; that no other penalty for that

crime has ever been known to our law; that the right vested in the jury by section 8, of Article 5, of the Constitution of 1869, to *substitute* imprisonment for life, did not make imprisonment for life a penalty, *per se*, for the crime; and we are cited to *Dawson* v. *The State,* where it was held "that all that can be claimed for this section of the Constitution is that it vests in the jury a power of commuting punishment heretofore vested in the executive." 33 Texas, 492.

We confess we cannot see the distinction sought to be made. Imprisonment for life, whether so declared in so many words or not, was, nevertheless, under section 8, Article 5, a legitimate mode of punishment for murder in the first degree whenever the jury, in their discretion, saw proper to impose it; and, so long as it might be legitimately imposed, we cannot see why it was not as much a penalty for the crime as the infliction of death. And the same court which decided *Dawson* v. *The State* must have come to and entertained this opinion, for they subsequently held that the omission of the judge to charge the jury, in a case of murder, that the punishment for murder in the first degree might be commuted to imprisonment at hard labor for life was such error as demanded of them a reversal of the case. *Marshall* v. *The State,* 34 Texas, 664.

To our minds the conclusion is axiomatic, and seems "to follow as the night the day," that so long as murder of the first degree might be punished by imprisonment for life, imprisonment for life was a penalty or mode of punishment for murder of the first degree recognized by our law.

Being, then, one of the penalties for the offense at the time the homicide was committed, the same rules apply and should control the question as govern in determining whether or not a law is *ex post facto,* and, therefore, inhibited by the Constitution of the United States. The leading case upon this subject is *Calder* v. *Bull.* Discussing that portion of section 10, Article 1, Chase, J., delivering the opinion of the

court, says : " I will state what laws I consider *ex post facto*, within the words and intent of the prohibition : 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.    2d. Every law that aggravates a crime, or makes it greater than it was when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed.    4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.    All these and similar laws are manifestly unjust and oppressive.    *   *   *   But I do not consider any law *ex post facto*, within the prohibition, that modifies the rigor of the criminal law, but only those that create or aggravate the crime or increase the punishment, or change the rules of evidence for the purpose of conviction."    3 Dall. 309.    The same rules are adopted in the following authorities : *Holt* v. *The State*, 2 Texas, 363 ; *Dawson* v. *The State*, 6 Texas, 347 ; 1 Kent. 408 ; 1 Blackf. (Ind.) 193 ; 6 Cranch, 138 ; *Cummings* v. *Missouri*, 4 Wall. 326 ;' *Ex parte Garland*, 4 Wall. 391 ; *Shepherd* v. *The People*, 25 N. Y. 406 ;  Cooley on Const. Lim. 266 ; 1 Bishop on Cr. Law, sec. 219 ; 2 Story on Const. 199, sec. 1345.

Considering, then, as we have done, and most properly as we conceive, that the substitution of imprisonment for the death penalty, as provided in the Constitution of 1869, was but another penalty for murder in the first degree, then the defendant was entitled to have the question submitted to the jury as to whether in his case they would exercise the discretion and substitute such punishment — his offense having been committed when such was the law of the state. The supposed and implied repeal of that law by the Constitution of 1876 would make the punishment more rigorous than it was when the crime was committed, by depriving

the defendant of a most important right. That imprison-- ment for life would be a mitigation or amelioration when. substituted for the death penalty, we suppose no one will. deny ; that the deprivation of this right was an aggravation of· the rigor of the law, we think equally incontrovertible. And. we take it to be settled as a fixed principle, by the authorities. above cited, that in matters involving life no uncertainty should rest upon the question, but that any radical change· which affects the mode or degree of punishment should be condemned as *ex post facto* and unconstitutional, unless. clearly and indisputably a mitigation of the former pun-- ishment.

From the foregoing it will be seen, as we have before stated,. that this court hold that the right to substitute imprison-- ment for life, conferred upon juries, in cases of murder in. the first degree, by section 8, Article 5, of the Constitution of 1869, made that punishment one of the penalties for that. crime. If a penalty, then, in addition to the positions above· assumed, our statute furnishes ·in harmony therewith a proper rule of procedure in these words : "When the pen-- alty for an offense is prescribed by one law and is altered by a subsequent law, the penalty of such second law shall not. be inflicted for a breach of the law committed before the sec-- ond shall have taken effect. In every such case the offender· shall be tried under the law in force when the offense was committed, and, if convicted, punished under that law,. except that when, by the provisions of the second law, the· punishment of the offense is ameliorated, the defendant shall be punished under such last enactment, unless he elect to receive the penalty prescribed by the law in force when the offense was committed." Pasc. Dig., Art. 1616. In the case at bar the right of election did not obtain, because the last law did not ameliorate the punishment. Relatively con- sidered, the statute as quoted is apparently but a positive.

enunciation of what was in reality the law before its adop-tion, as shown by the authorities cited above.

The conclusion of the whole matter is that, when a mur-der was committed whilst the Constitution of 1869 was in force as the organic law of the state, the defendant's right to have the jury charged that they might substitute impris-onment for life instead of the death penalty, is so clear that a failure of the court so to charge will be considered an error or omission, for which the judgment will be reversed.

It only remains to notice the objection that the court erred in rendering a judgment upon the verdict because the ver-dict did not assess any penalty whatever against the defend-ant. This objection is not well taken, for the verdict was of itself in form sufficient to warrant the judgment ren-dered by the court. It will be remembered that the verdict was in these words : "We, the jury, find the defendant guilty of murder in the first degree." Our law declares that "the punishment for murder of the first degree shall be death." Art. 2271. The other provisions of the Code of Procedure relative to verdicts are as follows :

Art. 3091, Pasc. Dig.: "The verdict in every criminal case must be general, * * and where the plea is not guilty they (the jury) must find that the defendant is either "guilty" or "not guilty,' and, in addition thereto, they shall assess the punishment in all cases where the same is not absolutely fixed by law to some particular penalty.

Art. 2268, Pasc. Dig. : "If the jury shall find any person guilty of murder they shall also find by their verdict whether it be of murder of the first or second degree ; and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty ; and, in either case, if they shall find the offense to be murder of the second degree, they shall also find the punishment."

But the jury are not required to assess the punishment if they find murder of the first degree. Why? Because if, under a proper charge, they had declined to exercise their discretion in substituting imprisonment for life, and they had found the verdict which they did in this instance, the verdict itself would be good. The law, as we have seen, fixes the penalty at death, and it would be a work of supererogation to require the jury to assess that punishment.

In *Buster* v. *The State*, 42 Texas, 315, which we think lays down the proper rules by which verdicts in murder cases are to be tested, the verdict was held to be bad because it did not say of what degree of murder the defendant was found guilty, though it did find him guilty and affix the death penalty. And in *Perry* v. *The State* the court say: "The verdict is not vitiated because, after finding the defendant guilty of murder in the first degree, the jury unnecessarily proceed to fix the punishment at death. Whilst they might have substituted imprisonment at hard labor for life instead of death—and in that event it would have been necessary that their verdict should be so framed—and whilst, where a verdict finds a defendant guilty of murder in the first degree, and is silent as to the punishment, the law steps in and affixes the punishment of death, it is not perceived that the unnecessary assessment of the punishment renders the verdict in anywise defective." 44 Texas, 478.

As a formal verdict, the one rendered in this case was amply sufficient to warrant the judgment. But on account of the errors and omissions in the charge of the court to the jury, as they have been examined and discussed in the foregoing pages of this opinion, the judgment of the lower court is reversed and the cause remanded.