JOHN WHITAKER *v.* THE STATE.

1. MURDER IN THE SECOND DEGREE.— CHARGE OF THE COURT in a murder trial was: "If an injury be inflicted in a cruel manner which results in the death of the party injured, though it was inflicted with an instrument not likely to produce death under ordinary circumstances, the killing will be murder if committed upon implied malice; and if you believe from the evidence that the defendant with implied malice did, in a cruel manner, inflict upon the deceased, with the rock mentioned, an injury from which he died, you will find the defendant guilty of murder in the second degree." *Held*, correct as an abstract proposition of law, but not warranted by the facts in this case. See the opinion for the evidence, and for a discussion of the question.

2. SAME.— See the opinion for a charge on implied malice held correct in the abstract, but erroneous ·in this case in use of the word "cruel," inasmuch as, in connection with other portions of the charge, it rendered prominent the feature of cruelty — a feature which is not raised by the evidence.

3. SAME.— The court charged that "implied malice is where one intentionally kills another without the formed design and deliberate mind required to constitute a killing on express malice, but under such a state of circumstances as do not reduce the killing to manslaughter or negligent homicide, or which do not excuse or justify the killing." *Held*, defective because it fails to instruct the jury what state of circumstances would excuse or justify the killing, or

reduce it to manslaughter or negligent homicide. See the opinion
for a discussion of the subject.

4. SAME — LIMITATION — CASE STATED.— It was in proof that some six
years elapsed from the date of the homicide before the filing of the
indictment, during a part of which time the defendant was in the
State of Missouri. Under this state of facts the court charged
the jury that if they believed from the evidence that the defendant
was guilty of negligent homicide they would acquit him, as that
offense was barred by the statute of limitations. But *held*, that
the time during which a person accused of an offense is absent from
the State shall not be computed in the period of limitation; that,
negligent homicide being a misdemeanor, a prosecution therefor
would be barred after the lapse of two years, and that, under the
facts, the charge was upon the weight of the evidence. *Held*, fur-
ther, that the charge, being favorable to the defendant, would not
require a reversal of the judgment, but for the express mandate of
the statute, when exception to the charge was reserved by the
defense.

APPEAL from the District Court of Denton. Tried
below before the Hon. C. C. POTTER.

The trial was for the murder of E. Townley. The opin-
ion states the nature of the case, and collates the
evidence entire upon which the conviction was had. The
punishment awarded, upon a finding of guilty of murder
in the second degree, was a term of five years in the pen-
itentiary.

*J. A. Carroll* and *M. Fulton*, for the appellant: The
court, in its charge to the jury, defined murder in
the first degree, and then told the jury that murder in
the second degree was that space which is below murder
in the first degree and above manslaughter or justifiable
homicide; but the court did not tell the jury what facts
would excuse or justify the killing or reduce it to man-
slaughter. We submit that in this case this definition
was insufficient and did not cover the whole law of the
case, and that it is not a sufficient definition of murder
in the second degree to give the border line on the one

side and not define it upon the other. *McLaughlin* v. *State*, 10 Texas Ct. App. 357; *Johnson* v. *State*, 43 Texas, 612; *Maria* v. *State*, 28 Texas, 698; *Reed* v. *State*, 9 Texas Ct. App. 320; *Reynolds* v. *State*, 8 Texas Ct. App. 414; *Marshall* v. *State*, 40 Texas, 202; *Hudson* v. *State*, 40 Texas, 15; *Williams* v. *State*, 7 Texas Ct. App. 397 and 398.

The court charged the jury, in the eleventh section of its charge, that if the injury was inflicted in a cruel manner the killing is murder. We submit that there is nothing in the statement of facts to warrant the charge.

*J. H. McLeary*, Attorney General, for the State.

Willson, J. The law of this case cannot be properly discussed and understood without first reciting the facts in evidence.

In September, 1873, E. Townley died at a store or grocery house kept by one John Henderson, in Denton county. For the purposes of this opinion it will be assumed as a fact that his death was caused by a wound inflicted upon his head with a rock weighing two or two and a half pounds, and that the fatal blow with the rock was stricken by the defendant. The deceased went to Henderson's grocery on the morning of the day of his death, and drank whiskey until he became somewhat intoxicated. Henderson, Hood, Snider, Adkins and Horton were at the grocery It seems that all these parties were more or less under the influence of liquor, and Snider, Horton and the deceased were very much under its influence. Horton and deceased had a fight, which resulted in Horton's getting whipped. This occurred before defendant went to the grocery. Horton was defendant's brother-in-law. Defendant went to the grocery in the afternoon, and after reaching there took two drinks of whiskey, one a large drink. He remarked when he first went to the grocery that he had heard that some of them

had been imposing on Horton while he was drunk, and that they couldn't do that while he was there. Henderson told him that no one had imposed on Horton,—that it was a drunken row, and that Horton had only got what he deserved. The defendant replied then that it was all right. Deceased, at the time of these remarks, was playing on a fiddle, and, if he heard the remarks, seemed to pay no attention to them. Snider, being quite drunk and boisterous, Henderson proposed to tie him. Snider went to a tree and told Henderson to come and tie him. Henderson took a rope and wrapped it around Snider and the tree. This was all in fun. Hood and deceased started to go to Snider to untie him. Henderson and defendant interposed to prevent them from untying Snider. Hood and Henderson scuffled with each other,—all in fun,—Hood trying to get to Snider to untie him, and Henderson to prevent it. The defendant was sitting in the door of the house when Hood and deceased started to untie Snider. He got up, and after going about eight feet stooped and picked up a rock or rocks. Witness thought he had a rock in each hand. Deceased went to Snider as if to untie him. Defendant went up to deceased with the rocks in his hand and said, "You shan't untie him." Deceased said "he reckoned he would." Defendant then pushed deceased back, and said "he be d—d if he should untie him." Deceased started again towards Snider, when defendant pushed him back the second time. Deceased started again toward Snider, and witness then states as follows: "I looked and saw defendant with his right hand, with a rock in it, raised up as if to strike. I did not see Townley at this time,— did not see his hands, and don't know what he was doing. I saw defendant make a motion forward with his right hand. He held his hand up over his shoulder, within about three inches of his head, and made a motion as if to strike with the rock or toss it,

holding the palm of his hand to the front. I saw Townley sink down on his knee and fall to the ground. I did not see him hit, nor did I see the rock leave defendant's hand."

There was but one wound upon deceased, which was on the left side of his head, above and behind the ear, and was about one and a half inches long, and the skull appeared to have been broken. This occurred about 3 o'clock, P. M., and he died about 9 o'clock, P. M. Defendant remained with deceased, got water and bathed him, sent for a doctor, and waited on deceased until he died. A doctor came and examined deceased, and said he would be all right as soon as the whiskey died in him. One witness stated that when he got to the grocery, after the death of Townley, defendant was sitting by the side of Townley, and looked up at witness and laughed and said: "Get down and see what you think of this case."

The deceased was a strong, muscular man, weighing about 150 or 160 pounds; he was a little lame in one leg. The defendant at the time of the homicide, one witness says, was about 16 years old and weighed about 115 pounds; other witnesses stated that he was 21 years old or over, and weighed about 135 pounds. The defendant left the country immediately after the killing, and was arrested in Missouri in 1879, and brought back and tried upon an indictment for the murder of Townley, filed 19th September, 1879, and was convicted of murder in the second degree and his punishment assessed at five years' confinement in the penitentiary.

No less than twenty errors are assigned by defendant's counsel, in the proceedings in the court below. We do not think it necessary to discuss and determine all the questions thus raised and argued by counsel, and shall confine our opinion to such of the assigned errors as we deem of importance with reference to this particular case.

One error assigned points to a portion of the charge of the court which is as follows: "If an injury be inflicted in a cruel manner, which results in the death of the party injured, though it was inflicted with an instrument not likely to produce death under ordinary circumstances, the killing will be murder if committed upon implied malice as heretofore defined to you in 5th section of these instructions; and if you believe from the evidence that the defendant, with his said implied malice, did in a cruel manner inflict upon said E. Townley, with the rock mentioned in the indictment, an injury from which he died, you will find the defendant guilty of murder of the second degree." This charge was excepted to at the time of the trial, as shown by defendant's bill of exceptions.

We think the charge is correct as an abstract proposition of law. (Penal Code, arts. 614–617.) "Implied malice" is malice presumed by law from the commission of any deliberate and cruel act, however sudden, done or committed without just cause or excuse. *(Jordan* v. *State,* 10 Texas, 479.) If the injury which caused the death was inflicted in a cruel manner, the law would certainly imply malice, notwithstanding the instrument used in inflicting the injury be one not likely to produce death. It is the *cruel* manner in which the act is committed that stamps it as malicious. If, then, the evidence in the case before us warrants the charge under discussion, we are of the opinion that it is unobjectionable. But it is contended that there are no facts in this case which authorize such a charge, and that therefore it was error to give it.

We have searched the statement of facts carefully to find evidence which would authorize the court to submit to the jury the issue as to whether or not this homicide was perpetrated in a *cruel* manner. We can see nothing in the facts and circumstances of the killing which give to it the character of cruelty, any more than is found in

most cases of homicide. It is *cruel* in one sense to take human life under any circumstances. But when we speak of the *cruel* manner in which a homicide was committed, we mean that the killing was done in an unusual way,— that there were circumstances surrounding the tragedy which rendered the act peculiarly heinous, and showed in the slayer a wicked, malicious heart,— a mind fatally bent upon mischief. In the case before us the defendant struck the deceased but a single blow, and made no attempt to strike again. He might have stricken other blows; there was nothing to prevent his doing so. The manner in which he inflicted this single blow did not evince cruelty in the sense in which the law regards that word. As soon as deceased fell, and defendant ascertained that he was injured, he at once busied himself to assist him, and sent for a physician, and stayed by the wounded man, nursing and caring for him the best he could until he died. We cannot agree that these facts justified the charge in the language in which it was given, and we think it was well calculated to mislead and prejudice the minds of the jury, to the injury of the defendant's rights.

And what makes this portion of the charge more objectionable than it otherwise would be is the fact that it is followed by another paragraph embodying to some extent the same idea, thus: "When the circumstances attending a homicide show an evil or *cruel* disposition on the part of the party committing the homicide, or that it was the design of the person offending to kill the deceased, and if he commit the homicide upon his implied malice, he is guilty of murder in the second degree, although it may appear that the means he used were not in their nature calculated ordinarily to inflict death." This is also correct law, and would have been unobjectionable in this case if it had omitted the word *cruel;* but in using that word it submitted to the jury an issue which was not

raised by the evidence, and, following as it did the pre-
vious paragraph in which the cruelty of the manner of
committing the act of homicide is referred to, it made the
feature of cruelty still more prominent and was calcu-
lated to impress the jury with the belief that the court
viewed that particular homicide as a cruel one, and there-
fore murder in the second degree. The 10th subdivision
of the charge upon this branch of the case was a proper
charge, applicable to the facts, and was entirely suf-
ficient.

The charge of the court is also objected to because
it does not sufficiently define murder in the second
degree. It very fully and clearly defines murder in the
first degree, and instructs the jury that under the evi-
dence the defendant is not guilty of murder in the first
degree. It then proceeds to explain implied malice as
follows: "Implied malice is where one doth intentionally
kill another without the formed design and deliberate
mind required to constitute a killing on express malice,
but under such a state of circumstances as do not reduce
the killing to manslaughter or negligent homicide, or
which do not excuse or justify the killing." This is the
whole of the definition of murder in the second degree as
given in the charge. The jury are nowhere instructed as
to the state of circumstances which would reduce the
killing to manslaughter. It is contended by counsel for
defendant that the definition of murder in the second
degree, as given in the charge, is imperfect without a
further definition of manslaughter. We are of the same
opinion. How could the jury know, without instruc-
tions from the court, what state of circumstances would
reduce the homicide to manslaughter.

This charge, in effect, tells the jury that the homicide
is not murder in the second degree if it is manslaughter,
negligent homicide, or excusable or justifiable homicide.
Having told the jury this much, it seems to us that, to

have enabled them to determine whether or not it was murder in the second degree, they should have been further instructed as to the state of facts which would constitute all the lower degrees of homicide.

It is also objected to the charge upon negligent homicide that it concludes by instructing the jury that, if they believe from the evidence that the defendant was guilty of negligent homicide, they would acquit him, as that offense was barred by the statute of limitation. It is contended by defendant's counsel that this was a charge upon the weight of evidence, and calculated to injure the defendant by telling the jury, in effect, that unless they convicted the defendant of murder in the second degree they must acquit him entirely. There was evidence in the case to show that immediately after the homicide the defendant left the county, and was for a while in Austin, Travis county, and after that was absent in the State of Missouri until after the filing of the indictment in September, 1879,— the homicide having been committed some six years before the indictment was presented. It is provided by art. 202, Code Crim. Procedure, "That the time during which a person accused of an offense is absent from the State shall not be computed in the period of limitation." Negligent homicide being a misdemeanor, a prosecution for the offense would be barred by the lapse of two years after the commission of the offense. (Code Crim. Proc. art. 200.)

We think the charge upon this subject, while it was favorable to the defendant, assumed as a fact that the offense was barred, when the evidence left that question a doubtful one which should have been submitted to the jury for their determination, and was therefore a charge upon the weight of evidence. While we would not be inclined to reverse the judgment for this error, yet, the charge having been excepted to by the defendant at the time, the statute in such case positively demands

·a reversal of the judgment. (Code Crim. Proc. art. 685.)

There are other questions in this case which we will not discuss, as they are not likely to occur upon another trial. And it is not necessary to a determination of this case that they should be decided.

*Reversed and remanded.*