### G. J. LINDSAY V. THE STATE.

1. If, on the trial of a case of homicide, facts appear which are common alike to murder in the first and second degrees and to manslaughter, the court should instruct the jury as to the different degrees of murder, and also as to manslaughter.

2. On the trial of a case of homicide the defendant asked instructions defining manslaughter and murder in the second degree, and defining the punishment affixed by law to each offense. *Held*, that in view of the evidence, the instructions should have been given, and, for their rejection, this court reverses the judgment of the court below.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

The opinion of the court sufficiently indicates the facts of the case.

*Waelder & Upson*, for the appellant. We ask, in the language of this court, in the case of Ake *v.* The State, 30 Texas, 475, "Do the external circumstances" of this case

22

" satisfy the mind that the defendant acted upon a formed de-
" sign, resulting from a sedate, deliberate mind ? "   " We think
" not," was the answer of the court in that case, and so, we
think, it must be in this. ·

   " At common law, when the fact of killing is established,
" the presumption of law is, that it is done upon malice afore-
" thought, until the contrary appears."   " Under our statute,"
says this court, in the case last cited, " this rule should be car-
" ried no further than to raise, from the fact of killing, the
" presumption of murder in the second degree, if there be no
" explanatory circumstances introduced by the State or the
" prisoner."   (30 Texas, 474.)   Such legal presumption ought
not to be held to take away life.   (5 Yerg., 341.)

   Again we quote the language of this court, in the case of Ake
v. The State :  " Do the external facts and circumstances of the
" case at bar disclose sedate mind and formed design antecedent
" to the killing, if but for a moment ?   Do we discover any
" concerted schemes, former menaces, or grudges ?   If not,
" malice express is wanting, and a conviction for murder of the
" first degree cannot be sustained."

   In this case, the evidence shows not only such circumstances
as would reduce the killing to murder in the second degree, but
it shows such adequate cause as to reduce the offense to man-
slaughter.   The first that is known of the difficulty, the de-
fendant's mouth is bleeding : one of his teeth had been knocked
out ; the deceased, Smith, had struck him with a six-shooter.
This was the cause of the shooting. The deceased was a power-
ful man ; the defendant weak and in feeble health.   For some
cause unknown, arising within the space of fifteen minutes, the
deceased strikes defendant with a pistol, knocking out (as al-
ready stated) one of his teeth, causing evidently much pain, and
considerable loss of blood ; the defendant is much excited, pale,
and, while in this state of mind, he kills the deceased—the
whole difficulty not lasting more than from twenty seconds to
one minute.   Where, we ask again, is " the formed design re-
" sulting from a sedate, deliberate mind ? "

The record must disclose that sedate mind and deliberate, preconceived purpose which indicate express malice, or circumstances which point with unerring certainty to malice express. (Ex parte William Cooper, 31 Texas, 184.)

In the case of Anderson v. The State, the circumstances of the killing were, as we conceive, stronger against the accused than in the present case; yet the court, in charging the jury, left the whole case with them, enabling them to find the defendant guilty either of murder in the first or second degree, or of manslaughter; and the charge is approved by this court. (31 Texas, 440.) In the case at bar, the court below not only failed and refused to define the offense of manslaughter (a fact to which we shall presently call attention), but, from the slight, we might say passing, attention given to the reduced grade, left the jury to infer that there were not even such extenuating circumstances as would reduce the killing to murder in the second degree.

We have thus far treated this case with reference to the charges given by the court below to the jury. We will now go farther, and endeavor to establish that the court further erred in failing to define manslaughter, and leave the jury to determine the grade of the homicide.

In the case of Maria v. The State (28 Texas, 698), the accused had, in a sudden transport of passion, killed Mary. She was tried, and convicted of murder in the second degree. An appeal was taken, and the judgment reversed, for the reason that the charge " did not properly submit to the jury to ascer- " tain, from the evidence, whether in fact the accused was " guilty of murder or manslaughter;" and the court further say, that " the statute makes it the duty of the judge  *   * . * " to distinctly set forth the law applicable to the case." (28 Texas, 711.)

The court, in the case at bar, not only failed, but refused to do this, when special charges were asked by the defendant, defining the offense of manslaughter. If it is the province of the jury to pass upon the facts of any given case, as we have

all been taught, then, it seems to us, it was clearly the duty of the court to submit the charges asked by the defendant on the question of manslaughter. We have already adverted to the main facts of this case, and insist that there was sufficient in the evidence to allow the jury to determine whether the killing occurred " under the immediate influence of sudden passion, " arising from adequate cause."

The reasons which dictated the submission of questions of fact to the jury, in our system of jurisprudence, had their origin in the wisdom and humanity of past ages. The same reasons still exist; the same humane spirit is still carried into the administration of justice. Hence the judge who seeks to enforce his own views as to the facts of any given case, takes from the province of the jury that which rightfully belongs to them.

Cases in which guilty parties have escaped punishment are not infrequent; and not seldom has this arisen from the fact that judges did not leave sufficient latitude to the juries in passing upon the facts. One of the modes of preventing this abuse (if we may so call it) is the application of the corrective by the appellate court, in cases where too great rigor has led the district judge into erroneous rulings, and the assumption of too great power, in determining the facts of a case. The fact that guilt may nevertheless go unpunished at times, is no reason why injustice should be dealt in isolated instances.

That in the case at bar too great rigor has led to the infliction of oppressive punishment, we earnestly believe, and therefore confidently trust that the error will be corrected by this court.

As we see this case, the court below did not only fail to apply the law, as held by this court, but its rulings are also in conflict with the adjudications in other States—States, too, in which the law of homicide is rigorously and vigorously administered.

" If a man be greatly provoked by any gross indignity, and "immediately kill his aggressor, it is voluntary manslaughter, " and not excusable homicide ;   *   *   neither is it murder, for " there is no previous malice." (2 Whart. Am. Crim. Law, Section 932.)

" The true criterion seems to be, that when both parties " are actually in conflict at the time the mortal stroke is given, " the crime is that of manslaughter." (Ibid. Section 935.)

" When persons fight on fair terms, and, after an interval, " blows having been given, a party draws, in the heat of blood, " a deadly instrument, and inflicts a deadly injury, it is man- " slaughter only." (Ibid. Sections 974, 978, and 979.)

" Where death ensues, in heat of blood, on immediate provo- " cation, there having been no previous malice, the offense is " manslaughter." (Ibid. Section 987.)

" The crime of murder requires the mind to have acted with " deliberation and intelligence; and when it is clouded by pas- " sion, the killing is only manslaughter." (2 Bishop, Section 723.)

The question is, " whether the person who inflicted the inju- " ry which resulted in death had really the command of his pas- " sions and acted from a mind undisturbed, or whether reason " had lost, in part, its sway." (Ibid. Section 724.)

" It is laid down that the law, having a regard for the frailty " of human nature, will not put an act done upon a sudden im- " pulse, and in the heat of passion, on the same footing, in re- " gard to guilt, with a deed deliberately performed." (Preston v. The State, 25 Miss., 387.)

" We nowhere find that the passion which in law rebuts the " imputation of malice, so as to reduce the killing to man- " slaughter, must be so overpowering as, for the time, to shut " out knowledge and destroy volition. All the writers concur " in representing this indulgence of the law to be a condescen- " sion to the frailty of the human frame, which, during the *fu- " ror brevis*, renders a man deaf to the voice of reason, so that, " although the act done was intentional of death, it was not the " result of malignity of heart, but imputable to human in- " firmity." (The State v. Hill, 4 Dev. and Bat., N. C., 491.)

The idea that reason must be " dethroned," and that there must be a " whirlwind of passion," in order to mitigate the kill-

ing to manslaughter, is repudiated in Young v. The State, 11 Humph., 202. The court in that case, quoting from East., P. C. 232, Foster, 313, and Roscoe's Criminal Evidence, 557, say : " Whenever death ensues from sudden transport of passion, or " heat of blood, if upon reasonable provocation, and without " malice, or upon sudden combat, it will be manslaughter."

" If two men fight upon a sudden quarrel, and one be killed, " it is but manslaughter, although the death is caused by the " use of a deadly weapon." (State v. Curry, Jones' N. C. R., 283.)

We might multiply authorities upon this point, but will not further trouble the court with references, which at last would lead us back to the facts of this case, the provocation given, the wounding of the defendant, the heat of his passion, induced by the acts and words of the deceased, all of which preclude the idea of malice on the part of the accused, and show, we think, the errors of the court of which we complain.

*Wm. Alexander, Attorney-General,* for the State.

OGDEN, J. The appellant was convicted of the murder of Herrick D. Smith, and sentenced to the penitentiary for life.

The facts of this case are briefly and substantially as follows: The appellant and deceased were comparatively strangers in the country; they had been traveling companions and friends; they came to San Antonio together, put up at the same hotel, and had roomed and slept together. On the day, and but a short time before the deceased was killed, they, in company with others, had been engaged in a social game of cards, and about fifteen minutes before the deceased was shot, he and the appellant were walking, arm-in-arm, up and down in front of their room, apparently engaged in friendly and pleasant chat; they entered their room together, and in a short time the deceased cried for help; a person near by ran into the room and found deceased holding appellant on a bed, and holding his hands pinioned to the bed. The appellant was lying on his back, and

was holding a pistol in one hand, and was bleeding freely from the mouth. The deceased was a large and powerful man, and appellant was then weak and in feeble health. The person who entered the room in answer to the call for help, took the pistol from the hand of the appellant and carried it out of the room, and, as he was leaving, the deceased released the appellant, who rose from the bed, making use of a threatening epithet. The alarm was given, and persons started to the room, and, as they opened the door, the appellant shot, and deceased fell mortally wounded. The person who heard the first alarm testified that not more than one minute transpired between the first cry and the fatal shot.

Immediately preceding the shot, some words passed between the deceased and appellant not distinctly understood by the witness. The appellant had received an injury in the mouth, and one tooth had been knocked out. The homicide was promptly confessed by appellant, who was arrested by the sheriff in the room, and conveyed to jail. And on the trial, the material questions to be determined, were the character of the offense or degree of crime, and the punishment which under the law and the facts of the case should be imposed. These questions were for the jury to determine, under proper rulings and instructions of the court as to the law which should govern the case, and we would be disinclined to interfere with the determination of the jury, unless we were of the opinion that an error of law had been committed which might have led to an erroneous verdict.

Counsel for the appellant claim in the assignment of errors, that there were many errors in the rulings of the court on the trial of the case, and in the instructions to the jury, which should cause a reversal of the judgment. And prominently among the assigned errors it is claimed that the court erred in the instructions given to the jury, and in the refusal to give the instructions asked by the counsel for the defense. We are unable to discover any material error in the able instructions given, and we consider them generally as correct propositions of law,

and therefore the chief inquiry to be made, is, were the instructions wholly applicable to the facts of the case, and were they the only instructions which should have been given to the jury? They are a clear exposition of the law relating to murder in the first degree, to express and implied malice, and clearly instructed the jury in relation to acts instigated by a sedate, deliberate mind, and formed design. But does the record in this case disclose the fact that the appellant acted with malice aforethought, or with a sedate mind and formed design, or does it show that the fatal deed might have been committed under the immediate influence of sudden passion? These inquiries should be determined by a jury under proper instructions, and the jury should have been distinctly instructed in the law as to every degree of homicide to which the facts of the case could by any possibility have been properly applied.

Many facts in this case may be considered as common alike to murder in the first and second degrees, and to manslaughter, and we are unable to perceive any good reason why the jury should not have been instructed in this case as clearly in regard to manslaughter and murder in the second degree, as they were in relation to murder in the first degree. And without indicating any opinion in regard to the degree of crime proven, yet we are of the opinion that there was error in the charge of the court in not properly defining the distinction between murder in the first and second degree, and manslaughter.

The question here raised was ably and clearly decided in Maria v. The State, 28 Texas, 710, and in Ake v. The State, 30 Texas, 467, and need not be further considered now.

We therefore consider that the court erred in refusing to give the first, fourth, and fifth instructions asked by the defendant. The other errors assigned need not now be noticed, as on a new trial they may not again arise. We think the court should have granted a new trial, and for this cause the judgment is reversed, and the cause remanded.

Reversed and remanded.