Smith *vs.* The State of Georgia.

———

Tom Smith, plaintiff in error, *vs.* The State of Georgia, defendant in error.

1. To sustain a verdict of guilty of assault with intent to murder, the evidence should show that had death ensued from the assault, the defendant would be guilty of murder.

2. If the prosecutor in this case had been slain, the defendant, under the law and evidence contained in the record, could have been convicted of no higher offense than manslaughter.

Criminal law. Assault with intent to murder. Before Judge Hall. Newton Superior Court. September Adjourned Term, 1873.

Tom Smith was placed on trial for the offense of assault with intent to murder, alleged to have been committed upon the person of one Arthur Jackson, on the 10th of May, 1873. The defendant pleaded not guilty. The evidence for the state made, in brief, the following case:

Sam Hunter and Steve Cody were playing marbles in the road, and Arthur Jackson was seated on the fence looking on, when defendant came up. He said to Jackson that he wanted to bite his ears like he used to bite them. Jackson replied that he should do no such thing. Defendant said, " damn you, I will bite them anyhow." At the same time he jumped on Jackson and endeavored to bite his ears. Jackson pushed him off. He then grabbed at Jackson, scratching his face, causing the blood to flow. Jackson said that if a man played with him, he did not want him to tear the blood out, and to

Smith *vs.* The State of Georgia.

go off and to let him alone. Defendant replied, "by G—d, may be you don't like it, and if you don't, you need not take it." Jackson told him to go off from him. He advanced on Jackson again, saying he would bite his ears some, and pulled him off the fence. Jackson caught him by the breeches and turned him over the fence backwards. He carried Jackson's hat over with him. Milton Gill, who was standing by, said, " Jackson, if you don't mind you will break that nigger's neck." Jackson said to defendant that he did not intend to let him fall so hard, and asked him if he was hurt. He said he was not. Jackson asked him to hand his hat over. defendant said, " wait, damn you, let me hit you first." He then handed the hat over, cotemporaneously hitting Jackson in the eye. He then got over the fence and caught Jackson around the neck, who said to him, "Smith, you ain't no man, go away; I could whip you with a hickory." He replied that it was a "G—d d—d lie, by G—d." Jackson said, "Smith, a man give me the damned lie in Covington this morning, and I hate for a man to keep on giving me the damned lie in cold blood." He replied that "it was a G—d d—n h—ll fired lie, by G—d, and if you don't like it, you need not take it." Jackson slapped his face. He said, "Jackson, are you mad ?" Jackson replied that he was not. He then said "stay here until I come back." He left and went home;. which was about two hundred and fifty yards from the place where they were scuffling. Jackson moved away from the fence and sat down in the road. After the lapse of ten or fifteen minutes, he heard the defendant hollow, " Clear the way you women and children, by G—d." He was about fifty yards from Jackson, and had two double-barreled shot guns. Jackson jumped up and told him to shoot, that nobody was afraid. He placed the gun which he had in his right hand against the nearest palings, and took the other one from his shoulder. Jackson said, "shoot ahead, here is your mule," and at the same time stepped to the side of and between the palings. The defendant fired. Jackson returned to the centre of the road and asked him what he meant. He replied, "I

mean to shoot, G—d d—n you." Jackson said, "shoot quick for I am coming to you," at the same time advancing on him. When Jackson was within thirty yards of him a second shot was fired, the shot striking Jackson on the right side. Jackson told him to shoot again as he was coming at him. The defendant threw down the empty gun and took the other and half cocked it. Jackson was advancing on him so fast that he pulled the trigger, but the gun would not go off. He cocked it again, but by this time Jackson had reached him and struck the muzzle of the gun. It went off and the shot lodged in his head. The last shot also struck his left arm. He seized the gun in his right hand and struck at the defendant's head. The blow missed his head, struck the ground and broke the gun in pieces. Jackson had a switch in his hand at the commencement of the difficulty about as large as his thumb. He threw it down in the road.

The evidence for the defense did not materially alter the case made by the state. It tended to show that Jackson was very violent in his conduct to defendant before the shooting, and that he commenced advancing upon the defendant as soon as he saw him with his gun, telling him to shoot, and that all three shots were fired under these circumstances. Also, that when Jackson struck at defendant with the gun, he did not miss him, but, on the contrary, cut his head very badly.

The jury returned a verdict of guilty. The defendant moved for a new trial because the verdict was contrary to the law and the evidence. The motion was overruled, and defendant excepted.

H. D. Capers, by J. J. Floyd, for plaintiff in error.

T. B. Cabaniss, solicitor general, by Peeples & Howell, for the state.

Trippe, Judge.

It has been so often decided as to what the evidence must show to sustain a conviction for the offense of an assault with intent to murder, that it is unnecessary to do more than merely to reiterate it here. Had death ensued from the assault,

Smith *vs.* The State of Georgia.

and from the circumstances of the killing, the defendant would only have been guilty of manslaughter ; then he cannot be guilty of an assault with intent to murder, when there is no killing. All the ingredients of murder, except the killing, enter into and are necessary to constitute the crime of assault with intent to murder. At least there must be malice, express or implied, that would make the assailant a murderer, had he taken life in the assault. If there cannot be murder without malice, there cannot be an intent to murder unless the same element of malice appears : *Meeks vs. The State,* 51 *Georgia,* 429, and *Jackson vs. The State,* 51 *Georgia,* 402. As this case goes back for another trial, the testimony will not be discussed here, further than to say that the record shows that the defendant had stopped and put down his guns, when the prosecutor started towards him, with threatening invitations to shoot—that he was coming—to shoot quick—that he was coming to him, etc., etc. The defendant seems to have been but a weakling compared to the prosecutor, who had already shown his complete power to do as he might please with defendant. The evidence for the defense certainly makes out a case that would not have been murder had the defendant killed the prosecutor, and it could scarcely have been worse under the prosecutor's own statement, if what he says about the first firing be stricken out. As to that firing, it does not appear that defendant shot at the prosecutor, or in what direction he did fire. It is probable he did fire at him, but the prosecutor says "he stepped to the side of and behind the palings." This was before the firing. The defendant was fifty yards off ; some, and most of the witnesses, made it a good deal farther. The prosecutor then sprang out, rushed towards the defendant, with the threatening declarations, and with the effort to do great violence to defendant when he reached him. It was under these circumstances the other firing took place. But the matter will be passed on again by a jury, and no further comment on the testimony will be made.

Judgment reversed.