## G. W. MARNOCH *v.* THE STATE.

1. SEAL OF COURT. — Defendant objected to being forced to trial, on the ground that the seal on his copy of the *venire facias* bore the legend "District Court, Bexar County," instead of "District Court of Bexar County," as directed by law. *Held*, that the objection was properly overruled, the seal being in substantial compliance with law.

2. PRACTICE — The district attorney being disqualified in this particular case to represent the State, the court below, at a former term, appointed an attorney to conduct the prosecution in his stead, and at that term the appointed attorney qualified and acted; but at the ensuing term the same attorney was allowed by the court to represent the State in the case without a reappointment or new qualification, and prosecuted the case to conviction. *Held*, no error is apparent of which the appellant can complain.

3. MURDER — EVIDENCE. — In a trial for murder, the circumstances of a previous difficulty between the defendant and the deceased are competent evidence for the State in order to show the *animus* of the homicide, and may, as in the present case, be competent for the defendant as explanatory of his acts.

4. SEPARATION OR MISCONDUCT OF JURORS. — Note the admonition and strictures on this subject in the opinion.

5. SELF-DEFENCE — CHARGE OF THE COURT. — An instruction on the right of self-defence is objectionable, and may, as in the present case, be material error, if it limits the right of self-defence to actual danger. See the facts in illustration.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

At the April term, 1878, of the District Court of Bexar County, the appellant was indicted for the murder of Charles

Mueller, on the 18th of March, 1878, by shooting him with a gun. At the April term, 1879, a trial was had, and he was found guilty of murder in the second degree. His punishment was assessed and adjudged at twenty years' confinement in the penitentiary.

The material evidence in the case, as well as other facts of interest, will be found in the opinion.

*Harrison & Edmonds*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. Without confining ourselves to the order observed in the assignment of errors, or in the brief of counsel for the appellant as to the supposed errors, we will only notice one or two which seem to be mainly relied upon, before approaching the principal question upon which the determination of the case depends.

Exceptions were raised to the copy of the special *venire* served upon defendant, because the same was not " certified by the clerk under the seal of the District Court of Bexar County." This objection was settled in the case of *Cordova* v. *The State*, 6 Texas Ct. App. 208, which was also an appeal from the District Court of Bexar County.

It is contended that there was error in permitting M. G. Anderson, Esq., to represent the State on the trial. At a former term the county attorney had recused himself because disqualified in this particular case. M. G. Anderson was appointed in his stead, and qualified and acted at that former term. It is now maintained that without a reappointment and qualification he could not lawfully act at any subsequent term; and it is claimed further that the act of August 7, 1876, p. 87, sect. 12, is conclusive of the question. This section, which we copy from the Revised Statutes, Code Criminal Procedure, art. 39, is as follows: " Whenever any district or county attorney shall fail to attend any term of the District, County, or

Justice's Court, the judge of said court, or such justice, may appoint some competent attorney to perform the duties of such district or county attorney, who shall be allowed the same compensation for his services as are allowed the district or county attorney. Said appointment shall not extend beyond the term of the court at which it is made, and shall be vacated upon the appearance of the district or county attorney." Similar authority was conferred, with a similar proviso, upon District Courts under the act of 1846, in cases of failure to qualify by the elected district attorney. Pasc. Dig., art. 191.

The statute quoted evidently contemplates an appointment *in the absence* of the district or county attorney, and where the *pro tempore* appointee will represent the absentee generally in all the duties incident to his office. But here the county attorney was not absent, nor was M. G. Anderson appointed to represent him generally, but, so far as we are informed, in this particular case only. There is no question raised as to the legality of the appointment for the former term. How or why, since the appointment extended to but the single case, and because of disqualification in the case of the county attorney, it was or should be necessary that the court should renew the appointment, and the same appointee go through the form of qualifying anew at every subsequent term as long as the case was pending, is a position the force or reason of which we cannot appreciate. As long as the necessity exists, no reason is perceived why the original appointee should not attend the case to its final termination; and certainly, in the absence of any good reason why he should and could not act, and in view of the fact that the court which appointed him recognized his action at the subsequent term, we do not think that defendant can be heard to complain. *Eppes* v. *The State*, 10 Texas, 474; *The State* v. *Gonzales*, 26 Texas, 197; *Bennett* v. *The State*, 27 Texas, 701; *The State* v. *Manlove*, 33 Texas, 798.

It is unnecessary to consider the exceptions taken to the refusal of the court to permit certain questions to be asked for the purpose of getting in evidence the facts concerning a prior difficulty between the parties the day of the homicide, since it appears, and the fact is also stated by the judge in another bill of exceptions certified by him, that the witnesses did testify fully to every thing said and done by all the parties engaged in the former altercation.   Under the peculiar facts connected with the homicide, what had transpired in the former difficulty was admissible both in behalf of the State and defendant : of the State, to show the *animus* of the accused ; of the defendant, to explain the reasons of his return to the party with a loaded gun in his hands.

Complaint is made of a separation of one or two of the jurors from their fellows.   Whilst this objection is fully and satisfactorily answered in this instance by the affidavits of the jurors, and of the officers having them in charge, the frequency with which complaints of this character occur induces us again to call attention to the law which prohibits the separation of the jury in a felony case, except by permission of the court, with consent of the parties, and in charge of an officer.   Rev. Stats., Code Cr. Proc., art. 687. And any juror, and other person conversing with a juror upon any subject after he is empanelled in a felony case, except in presence of and by permission of the court, shall be punished for contempt of court, by fine not exceeding $100. Rev. Stats., arts. 690, 691.   A violation of these rules is made one of the grounds for which a new trial shall be granted in felony cases.   Rev. Stats., art. 777, subdiv. 7. Juries, and the officers having them in charge, should be admonished by the court in this regard, and the punishment imposed should be rigidly inflicted for every palpable violation of the law.   Such questions should not be permitted to arise, and will not except in rare instances, and cannot often where jurors and officers are strictly conscientious in the discharge of their duties.

In our opinion, the principal question in the case as presented by the record is the sufficiency of the charge of the court in its applicability to the facts of the case. Substantially stated, the facts are these: A dispute as to boundary of lands had arisen between some parties, and they had determined to settle it by a resurvey of their respective lines. How or in what manner defendant and deceased were interested is not made to appear. At all events, on the day appointed for the survey, the defendant, Charles Mueller (the deceased), John P. Mueller, and others, met at the dinner-table of one of their neighbors. The deceased told defendant that he (defendant) had been writing to the post-office department at Washington, charging him (deceased) with official misconduct as postmaster. Marnoch said he lied, or was a liar, or words to that effect. Deceased and his brother both used very abusive language towards defendant, and threatened to thrash him. No blows were passed. Charles Mueller (deceased) shook his fist in defendant's (Marnoch's) face. A short time afterwards the Muellers recommenced the quarrel, and wanted to fight defendant, but were prevented by the interference of others. Marnoch then left, saying, " I will go away, but I will come back again." The surveying party returned to their work, and whilst so engaged, about one and a half hours after Marnoch had left, he returned to where they were, having a double-barrelled gun in his hands. John P. Mueller, the brother of deceased, stepped up to him and said, " Did you bring that shotgun here to shoot me?" Marnoch replied, " No; I brought it here for protection or defence." The witness H. S. Baker says: " When the Muellers saw him coming with the gun, they became very much excited again, and wanted to take the gun away from defendant. One or both of them advanced towards him. Defendant said, ' I brought the gun for protection.' John P. Mueller had a hatchet in his hand, and both he and Charles made demonstrations against defendant as if to take

the gun away from him.   After the matter was quieted down, Marnoch came up to Navarro (the surveyor) and handed him something.   Charles Mueller said something to him, and made a rush towards defendant with both hands extended (other witnesses say he had his left hand in his pocket), the right hand above his head, as if to seize the gun ; there was nothing in his hands at the time.   Defendant said, ' Stand back,' and fired almost instantaneously.   *   *   *   Deceased was only five or six steps from defendant when he started and rushed suddenly upon him.   *   *   *   Mar-. noch had the gun at his hip when he fired.   The muzzle was pointing up."   William Boerner, another witness, says : "The Muellers tried to make Marnoch put down the gun, and Charles Mueller said in German to his brother, ' You take him in front and I will take him from behind,' or words to that effect.   *   *   *   I was lying on the ground a few steps off when the shooting took place.   Mueller advanced on Marnoch, and had to step over my legs in so doing.   *. *   *   Defendant said, ' Don't take my gun,' very hurriedly ; at the same moment the gun fired.   The right hand of Mueller was open and extended at the time of the killing."   All the witnesses testified that either of the Muellers was stouter than the defendant.   And all testified that when the deceased fell, he fell upon his face.

Upon the law of self-defence the court charged the jury as follows :  " Homicide is permitted in the necessary defence of one's person ; but the attack upon the person of an individual, in order to justify the homicide of the attacking party, must be such as to produce a reasonable expectation or fear of death, or some serious bodily injury.   If you believe from the evidence that the defendant took the life of the deceased in order to save his own life, or to prevent a serious bodily injury at that very moment about to be inflicted upon him, you will acquit the defendant."

Amongst the several special charges asked for defendant and refused by the court we find the following :  " If,

therefore, the jury believe from the evidence that, at the time of the killing of the deceased, he (deceased) was in the act of making an unlawful and violent attack upon the defendant, such as was calculated to create in the mind of the defendant a reasonable apprehension of death or serious bodily harm, they must acquit the defendant." The court says the charges were refused because they were already given in the general charge.

We do not think the charge of the court covered the question submitted in the above special instruction, especially upon the question of reasonable apprehension and appearances of danger. The special instruction, whilst it was not as comprehensive as it should have been, was still sufficient to call the attention of the court to the necessity of a charge upon this branch of the case ; and the court, under the facts above stated, should, in our opinion, have either given the charge as asked, or one more pertinently submitting the question to the jury. Under the charge as given, the jury were left to infer that the danger to the accused of death or serious bodily injury must have been actual and positive, in order to excuse the defendant for taking life. The language is, " took the life of the deceased to save his own life, or to prevent a serious bodily injury at that very moment about to be inflicted." Self-defence does not require any such positive proof of danger. See specially *Smith* v. *The State*, 52 Ga. 88 ; 1 Hawley's Am. Cr. Law Rep. 246.

" Men, when threatened with danger, must determine from appearances and the actual state of things around them as to the necessity of resorting to self-defence ; and if they act from reasonable and honest convictions, they will not be held responsible criminally for a mistake in the extent of the actual danger, where other judicious men would have been alike mistaken. A contrary rule would make the law of self-defence a snare and a delusion. It would become but a mockery of the sacred right of self-preservation." *Campbell* v. *The People*, 16 Ill. 16. Our

statute declares the same doctrine substantially. It declares that " the attack upon the person of an individual, in order to justify homicide, must be such as produces a reasonable expectation or fear of death or some serious bodily injury." Pasc. Dig., art. 2230; *Horbach* v. *The State*, 43 Texas, 242; *Irwin* v. *The State*, 43 Texas, 236; *Blake* v. *The State*, 3 Texas Ct. App. 581; *May* v. *The State*, 6 Texas Ct. App. 191; *Plasters* v. *The State*, 1 Texas Ct. App. 673; *Agitone* v. *The State*, 41 Texas, 501; *Edwards* v. *The State*, 5 Texas Ct. App. 593; *Cheek* v. *The State*, 4 Texas Ct. App. 444; *Smith* v. *The State*, 52 Ga. 88; 1 Hawley's Am. Cr. Law Rep. 246.

Because the court erred in failing to give in charge to the jury the law applicable to the case, as we have shown above, the judgment must be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*