## H. S. Williams v. The State.

1. Murder — Manslaughter — Charge of the Court. — If in a trial for murder the evidence tends, by any legitimate deduction, to prove that the homicide, though voluntary, was committed under the immediate influence of sudden passion, arising from a serious personal conflict, in which great injury was inflicted by the deceased, with weapons or by great superiority of strength, it is incumbent on the court to give in charge to the jury the law of manslaughter, even though the accused was the aggressor, provided the aggression was not with intent to bring about a conflict and kill the deceased. And if the court is in doubt respecting the necessity of such a charge, the doubt should be resolved in favor of the accused, and the charge be given.

2. Same. — Whether the injury inflicted by the deceased upon the accused constituted "adequate cause" is a question of fact for the jury to determine, under proper instructions from the court.

3. Same. — See evidence in a trial for murder requiring that the law of manslaughter should have been given in charge to the jury.

Appeal from the District Court of Johnson. Tried below before the Hon. J. Abbott.

The indictment charged the appellant with the murder of Joseph Robinson, by shooting him with a pistol, on the 20th of August, 1877. The jury found the appellant guilty of murder in the second degree, and assessed his punishment at fourteen years in the penitentiary.

In the opinion of the court will be found a clear recapitulation of all the material facts.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J. In a prosecution for murder, whenever the evidence may tend, by any legitimate deduction, to establish the fact that although the homicide was voluntary, yet it was committed under the immediate influence of sudden passion, arising from a serious personal conflict in which great injury was inflicted by the person killed, by means of weapons, or other instruments of violence, or by means of great superiority of personal strength, it is the duty of the court to instruct the jury as to the grade of manslaughter, notwithstanding the person guilty of the homicide was the aggressor, provided such aggression was not made with intent to bring on a conflict, and for the purpose of killing. Penal Code, arts. 593, 597.

What amount of injury must be inflicted to produce the adequate cause specified in the statute, or what disparity of personal strength between the combatants must exist, cannot be fixed by any definite general rule, but must depend upon the particular circumstances of each particular case. Our law seems to fix the limits between an assault and battery so slight as to show no intention to inflict pain or injury, which is not an adequate cause, and a serious personal conflict in which great injury is inflicted in some manner by the deceased, which is pronounced adequate provided it be sufficient to produce and does actually produce such a degree of anger, rage, resentment, or terror in a person of

ordinary temper as is sufficient to render the mind incapable of cool reflection. Penal Code, arts. 594, 597. The amount of the injury is therefore a question of fact for the determination of the jury, under proper instructions from the court; and in case of doubt in the mind of the judge as to the necessity of submitting the issue, such doubt should be resolved in favor of the prisoner. *Holden* v. *The State*, 1 Texas Ct. App. 225; *Lester* v. *The State*, 2 Texas Ct. App. 432; *Lyles* v. *The State*, 41 Texas, 180; *Hudson* v. *The State*, 40 Texas, 12; *Lindsay* v. *The State*, 36 Texas, 337; *Maria* v. *The State*, 28 Texas, 698. As said by the court in *Hudson* v. *The State*, above cited, "where there are any circumstances that would mitigate or reduce the offence to a lower grade, the defendant should have the benefit of those circumstances, under appropriate directions to be given by the court."

Tested by these principles, we are of opinion that the facts in evidence required that the jury should be fully instructed as to the law of manslaughter, and the omission of the court to give such instruction will require the reversal of the judgment. While there seems to have been some antecedent feeling between the deceased and the defendant, arising from their being suitors to the same lady, this feeling seems to have been principally, if not altogether, on the part of the deceased, the discarded suitor. The meeting on the morning of the difficulty appears to have been rather casual than designed, and certain portions of the testimony tend to indicate that the deceased went toward where defendant was travelling along the road, in company with others, and stopped upon meeting the defendant, when a conversation was held between them, the others in company with the defendant having passed on. Soon afterwards loud cursing was heard by them, and then three shots; and on returning to where the deceased and defendant had been left, it was found that the deceased was sitting on the side of the road, shot in the breast, and the defendant was

standing near him with a pistol in his hand, and remarked, when the others came up, "We got into a row and I shot him; and if he is not satisfied, I will shoot him again." No one witnessed the difficulty. The deceased was ten or fifteen pounds heavier than defendant, and a stouter man. The physician who examined the body of the deceased, and who testified for the prosecution on the trial, stated on the trial that he saw the defendant after the difficulty, and he had a slight cut on the top of his ear, not an eighth of an inch deep, which seemed to have been made with an edged tool of some sort, and another wound on his arm, which seemed to have been made with the teeth, the skin being broken in a circular form and drawn toward the centre.

The fact that defendant had borrowed a pistol a day or two before, ostensibly to carry with him on a trip to the West, and that no arms were found upon the deceased, and no evidence of a conflict was apparent upon the ground, — which the evidence shows was not of that character which readily received and retained impressions from the human foot, — were circumstances proper to be considered by the jury in connection with the other facts in evidence, but did not authorize the court to withdraw from the jury a consideration of the issues arising at the very time of the difficulty, and which might legitimately tend to induce the inference upon the part of the jury that the defendant might be guilty of the lesser rather than the graver grade of homicide.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*