## WILLIAM DWYER *v.* THE STATE.

MURDER.— INDICTMENT for murder reads: "In the name and by the authority of the State of Texas. The grand jury of Fort Bend county present in the District Court of said county, that about the 16th day of October, A. D. 1881, in Fort Bend county, Texas, William Dwyer did, with malice aforethought, kill H. Chatham, by striking him with a scantling; against the peace and dignity of the State." *Held*, that the indictment is in strict compliance with the form prescribed by the act of March 26, 1881, and that while this court has held that several of the forms prescribed by that act are insufficient and invalid because they do not set forth the acts, facts and omissions whicn they are intended to charge, the form prescribed for murder is sufficient to charge that offense. See the opinion for discussion of the question.

APPEAL from the District Court of Fort Bend. Tried below before the Hon. W. H. BURKHART.

The opinion states the nature and the disposition of the case.

The substance of the testimony of J. B. Miller, the first witness for the State, was that on the morning of the 16th of October, 1881, he went into the store of a Mr.. Rose in the town of Rosenburg, Fort Bend county, to procure paper upon which to write a letter. He there saw the defendant standing by the counter, and the deceased sitting on a coil of rope. The deceased remarked, seemingly to the crowd generally, that he could throw down any man who did not weigh ten pounds more than he did. The defendant said: "You cannot go out of doors and say so." The defendant went along out of the store, the deceased following along six or eight feet behind, and, after the defendant had emerged from the door, he seized a two by four scantling, and with it struck the deceased a blow on his arm. The deceased made an effort to get back into the store, but before he could do so the defendant struck him a blow on the head, and felled him. While deceased was prostrate, the defendant again struck him over the head with the scantling; at which blow some one hallooed to him, and he dropped the scantling and walked away. These occurrences took place between 8 and 10 o'clock A. M., and the deceased lingered until 7:30 o'clock P. M., when he died.

This witness testified that he saw no demonstrations made by the deceased towards the defendant, heard him make no violent threats or use any profane, vulgar or obscene language, or apply to the defendant any uncomplimentary epithets. The deceased and the defendant may have been drinking, but it was not manifest to the witness, who, however, is not a drinking man himself, and consequently no judge. The witness did not hear

the deceased call the defendant a "d—d Irish son of a b—h." The hands of the deceased were down by his sides when he was first struck, and he at no time raised them, until he did so in an effort to ward off the blows. The deceased did not appear at all angry. The witness watched the parties, expecting to see a wrestle. The deceased had no weapons of any kind either in his hands or about his body.

H. M. Rose, who was also in the house, testified for the State that the deceased and one McKinzie, both in liquor, were in the house, talking in an obscene manner, when the defendant came in and called for a bottle of whiskey, passing the deceased, who was sitting on a coil of rope. The deceased was bantering everybody for a wrestle, when the defendant interrupted him abruptly, and said, "You talk too loud." The deceased said, "I can burst your head open on a railroad tie;" to which the defendant replied, "You cannot come out of doors and say so." The defendant went out first, the deceased followed, staggering, with hands outstretched as if to reach for support in his progress. The witness expected to see a little fisticuff. This witness related the subsequent occurrences, the manner of attack, etc., very much as they were related by the witness Miller. He heard no threats from the deceased, nor did he see him make any manner of assault upon the defendant, or even angry demonstrations. No arms of any kind were found on the body of the deceased. Neither this witness nor the first witness, Miller, had ever seen the deceased before that morning.

These were the only witnesses who testified to the occurrences inside of the store. Those who were on the outside, and there were several, were agreed in their relation of what transpired. The defendant stepped out first and picked up a scantling, or billet of wood. The deceased followed, and, without a word having been spoken,

the defendant assaulted the deceased with the scantling, striking him a first blow without apparent effect, a second felling him to the ground, and a third after he was prostrate; the last two blows falling on the head and fracturing the skull.

J. H. Singletary testified for the defense as follows: "I knew the deceased well, and had known him at his home in Belleville for a number of years. He was a man of violent and dangerous character. He was considered by all who knew him to be a man who would carry out to the very letter any threat which he made. I heard that he was detected once in the act of waylaying to murder a gentleman in the town of Belleville. I have seen him in a number of street fights with all kinds of men. I have seen him carry weapons. The man he waylaid to kill, I heard, was the man who killed his father."

*Mitchell & Pearson*, for the appellant: It was error to overrule defendant's motion to quash the indictment, because, among other reasons, it does not charge an offense against the law, because it does not inform defendant of the nature and cause of the accusation against him, and because it is not sufficiently certain to enable the defendant to plead a judgment founded upon the same in bar of another prosecution for the same offense.

"In all criminal prosecutions, the accused shall have the right to demand the nature and cause of the accusation against him." As contemplated by this section of the Constitution this information can be imparted only through the medium of an indictment or information; and in this case only through an indictment, which is the "written statement of a grand jury accusing the defendant of an act or omission which by law is declared to be an offense." Such a statement, then, as is evident from natural interpretation, must, in order to convey the in-

formation sought and required, embrace every essential ingredient composing the particular offense according to its statutory definition. Otherwise, if the Legislature has the power to abridge this statement by making one less full sufficient, the nature of the offense, its essential qualities or attributes (in this case those which constitute the crime of murder), and the cause of the offense, which is the act committed with the manner and means of commission, cannot properly be said to be communicated. The indictment is not such as the framers of the Constitution contemplated; the Constitution is thus far nullified, and the accused is unadvisedly deprived of life, liberty or privileges without due course of the law of the land. The indictment simply charges, " that on the 16th day of October, 1881, Wm. Dwyer did with malice aforethought kill H. Chatham by striking him with a scantling." Const. Bill of Rights, sec. 10; 25 Texas, 722.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J. The indictment is as follows:

" In the name and by the authority of the State of Texas. The grand jury of Fort Bend county present in the District Court of said county, that, about the 16th day of October, A. D. 1881, in Fort Bend county, Texas, William Dwyer did with malice aforethought kill H. Chatham by striking him with a scantling; against the peace and dignity of the State." Upon this indictment the defendant was tried and convicted of murder in the second degree and his punishment assessed at confinement in the penitentiary for fifty years.

The principal question presented in this case is the sufficiency of the indictment. It is the exact form prescribed for the crime of murder by the act of March 26, 1881. (Gen. Laws 17th Leg. chap. 57, p. 60, form No. 2.) It is urged that this form is not an "indictment" within the meaning of section 10 of the Bill of Rights. While we hold that several of the forms prescribed by that act are

insufficient and invalid because they do not set forth the acts, facts and omissions which constitute the offenses they are intended to charge, we are of the opinion that the form prescribed for murder is not subject to this objection. It is very brief, and yet we think it contains every essential fact and element constituting the crime of murder. What is murder as defined by our Code? In substance it is the killing of a human being, with malice aforethought. It is an offense composed of but few elements; in fact but two, 1, a killing, and 2, that the act of killing was committed with malice aforethought. This indictment alleges the act of killing. It alleges that the killing was with malice aforethought on the part of the slayer. These are not allegations of legal results or conclusions, but of acts and facts which, taken together, complete the offense of murder. By the allegation of these acts and facts the defendant is fully informed of the nature and cause of the accusation against him. He is informed that about a certain time, in a certain county in the State of Texas, he killed a certain person by striking him with a scantling, and that he committed this act with malice aforethought. He knows from this information the facts that he is called upon to meet, and these facts, when proved, constitute murder. We therefore hold this indictment to be good.

There are other questions presented in this case by defendant's counsel, but we are of the opinion that there are no such errors disclosed by the record as would require or even warrant us in reversing the judgment of conviction. The evidence showed an unprovoked murder without mitigation, justification or excuse, and would well have supported, we think, a conviction of murder in the first degree. The court did not err in refusing to charge the law of negligent homicide. There were no facts in the case which would make such a charge proper.

The judgment is affirmed.

*Affirmed.*