## GEORGE MOORE vs. THE STATE.

### SUPREME COURT, TYLER TERM, 1883.

*Murder—Evidence of Character of Party Assaulted*, is not as a general rule admissible; but an exception is that, in trials for homicide, where the evidence presents the issue of self-defense, the general character of the deceased may be proved by the defendant to show that he, the defendant, was justified in believing himself in danger of losing his life, or of sustaining serious bodily injury from the deceased. Such proof is admissible when it will serve to explain the actions of the deceased at the time of the killing, which action must first have been established. See the opinion *in extenso* on the question.

*Same—Practice—Evidence.* It was proved that a few minutes before the killing, the deceased and the defendant exchanged angry words, and that the deceased left; that one L. who was present with the defendant slapped the defendant's shoulder and told him to go ahead, saying that he, L., was with the defendant, and had the money to back him in whatever he might do. *Held* admissible, without reference to the question whether or not L. was a co-conspirator. See the opinion for a formulation of the rule. Note also, reference in the opinion to other testimony, *held* properly admitted under the same rule.

*Same—Evidence.*—Under article 751 of the code of criminal procedure the state was properly permitted to introduce in evidence, in order to sustain objections to the competency of a proffered witness, an indictment charging him as a principal in the murder of the deceased. Such indictment, in the absence of a contrary showing, is *prima facie* evidence of the identity of the two transactions, and the trial court had judicial knowledge that the proposed witness had not as yet been tried upon that indictment. It was competent for the state to show, *aliunde* the indictment, the witness's participation in the act, and thus his incompetency to testify for the defense.

*Same—Charge of the Court—Express Malice.* See the opinion *in extenso* for charges of the trial court upon the subject of express malice *held* correct as abstract propositions of law, but liable to allow the jury to conclude that they were authorized to infer express malice without proof of such facts as would authorize the inference.

*Same—Practice.*—See the opinion *in extenso* for a charge of the trial court upon murder in the second degree, *held* deficient in not complying with the rule that "in-

structions should not be presented in the form of abstract propositions, but should be constructed upon the evidence in the particular case at bar." Nevertheless, as the objectionable charge was not excepted to when given, and no special instruction upon the subject was asked, this court holds the objection not available in the present case.

*Same—Self-Defense.*—Homicide is justifiable when the party slain is in the act of committing an unlawful and violent attack upon the party killing, such as is calculated to produce a reasonable expectation or fear of death or some serious bodily injury; and this is true though it should afterwards adpear that there was in fact no danger. A requested charge to this effect was refused. *Held,* error, inasmuch as the general charge did not present the principle fully, though it was invoked by the proof

*Manslaughter—Charge of the Court.*—An essential rule of practice is,that when the evidence presents an issue favorable to the defendant, the trial court should not disregard it, but should accord to the accused, fully and fairly, the submission of the issue to the consideration of the jury. Omissions of this character cannot be treated as immaterial. Upon evidence in this case the law of manslaughter should have been explained to the jury.

Appeal from Hunt County.

*Terhune and Perkins, Gilbert & Perkins, and Brooks & Looney* for appellant.

*J. H. Burts* Assistant Attorney General for the State.

## STATEMENT.

The opinion discloses enough of the evidence to illustrate a majority of the rulings thereupon. The testimony for the state and the defense represent the parties primarily in a quarrel at the front door of a saloon, with some conflict as to whether it was precipitated by the defendant or the deceased. It shows however that after a time of mutual abuse, the deceased started off from the saloon on horseback when he was denounced by the defendant as a cowardly——— The deceased thereupon turned, rode upon the defendant with his quirt uplifted in a threatning attitude. The defendant presented evidence to the effect that the deceased struck the defendant one or more blows over the head, before the latter fired. The defense also produced testimony to the effect that as he rode upon the defendant the deceased told him "now was his time to draw his weapons if he had any." At all events while he was grabbing at the pistol in the defendant's hand and either striking with his quirt or holding it in a threatening attitude, the defendant fired upon the deceased, ineffectually, when Phelps, a co-defendant under a separate indictment,fired from behind the deceased and the deceased fell, grappled with the defendant, and in the fight received other wounds. The defendant

fired three or four shots at the deceased. The evidence tending to show preconcert between defendant and Phelps, was that just before the shooting, the defendant, somewhat in liquor, started toward a third party to resent a supposed insult, when Phelps interfered, saying among other things, "he is not the man we are after." This has reference to the ruling upon the evidence of the witness Wilkins.

Opinion by Willson, J.

It was not error to overrule the exceptions to the indictment. All the essential elements of murder in the first degree are plainly and directly averred therein. Dwyer vs. The State, 12 Tex. Ct. App. 535; Peterson vs. State, Id. 650; Walker vs. State, *ante.*

It is made to appear from a bill of exceptions that upon the trial the defendant offered to prove by several witnesses that the character of deceased was that he was a violent and dangerous man, such a man might reasonably be expected to execute a threat made, and to press to a fatal termination a difficulty in which he might be engaged. This proposed testimony was objected to by the state, upon the grounds that it was immaterial and irrelevant, and it was rejected.

As a general rule, evidence as to the character of the person injured is inadmissible. Whar. Ct. Ev. Sec. 68; Stevens vs. State, 1 Tex. Ct. App. 591. But there is a well settled exception to this general rule. In trials for homicide, when the evidence presents the issue of self-defense, the general character of the deceased may be proved by the defendant, to show that he, the defendant, was justified in believing himself in danger of losing his life, or of sustaining serious bodily injury from the deceased. Horback vs. State, 43 Tex. 242; Stevens vs. State, *supra* 591; Whar. Cr. Ev. Sec. 69 *et seq*; 1 Whar. Am. Cr. L. 641; Creswell vs. State, Austin Term of this court.

In Horback's case (*supra*) the question of the admissibility of such evidence is exhaustively discussed, and after reviewing the authorities the court says: "It may be deduced from these authorities that the general character of the deceased for violence may be proved when it would serve to explain the actions of the deceased at the time of the killing; that the actions which it would serve to explain must be proved before it would be admissible as evidence; that if no such acts were proved as it would serve to explain, its rejection when offered in evidence, would not be error; and that, if rejected when a proper predicate has been established for its admission, it is held to

be error. This results in what has been previously attempted to be developed, that the general character of the accused for violence should be allowed to be proved, not as a substantive fact, in whole or in part abstractly constituting a defense, but as auxiliary to, and explanatory of some fact or facts to have occurred at and in connection with the killing, which tend to establish a defense, when thereby aided by furnishing reasonable ground for the beief on the part of the slayer that he is then in immediate and imminent danger of the loss of his life from the attack of his assailant. It is observable in most of these cases that it is said that the evidence of character for violence is admissible in a doubtful case. It can hardly be meant by this that it is admissible only in a doubtful case of guilt; for if that is doubtful, there is no need of proof of character or anything else to help out the defense. The explanation, it is submitted, is that the person killing is presumed to have committed murder by the act of killing, and in arraying the facts to establish that he acted in self-defense, if an act of the deceased at the time of the killing is of doubtful import, or is otherwise of a character that it would be explained and construed more favorably for the accused by adding to it the character of the deceased for violence, then such proof is admissible."

Applying these rules to the case we are considering, we think the court erred in rejecting the proposed evidence of the character of the deceased. Self-defense was relied upon by the defendant, and the evidence presented this issue. It was in proof that at the time of the killing, the deceased had assaulted, and was in the act of striking the defendant with a quirt. Here, then, was an act on the part of the deceased that evidence of the character might serve to explain, and cause it to be construed more favorably for the defendant. It might add much to the strength of the defense, or, in the estimation of the jury, it might have no weight whatever. It was not for the trial judge, nor is it for this court, to determine the effect to be given to such testimony. That was a matter for the jury alone to pass upon, and it was the defendant's right to have the testimony submitted for the consideration of the jury, in connection with the other facts in the case.

A few moments before the killing the defendant and deceased exchanged angry words, and deceased had gone away from where defendant was. One John Lindley, who was present with the defen-

dant, slapped defendant on the shoulder and told him to go ahead, that he, Lindley, was with him and had the money to back him in whatever he might do. This declaration of Lindley was admitted in evidence over the objections of defendant and this was excepted to at the time. We think this testimony was admissible without reference to the question as to whether or not Lindley was proved to be a co-conspirator with defendant in the commission of homicide. It was a statement of Lindley in the presence of and to the defendant. Mr. Wharton says : "If A, when in B's presence and hearing, makes statements which B listens to in silence, interposing no objection, A's statement may be put in evidence against B whenever B's silence is of such a nature as to lead to the inference of an assent." Whar. Cr. Ev. Sec. 679.

Upon the same principle, we think the testimony of the witness Wilkins, detailing the declarations of Phelps made at the time of the difficulty between defendant and Swain, was competent, and that the court did not err in admitting it. We cannot regard this testimony as objectionable upon the grounds that it was irrevelent or immaterial. It tended to establish the condition of defendant's mind, and evil intention on his part. However vague and unsatisfactory it may be to prove malice, still it cannot be said that it has no bearing in that direction, and it was for the jury to determine the consideration to be given to it in connection with the other evidence in the case.

Defendant offered John Lindley as a witness in his behalf, and the state objectdd to the witness upon the ground that said witness stood indicted for the murder of Boyd, as an accomplice with the defendant, and had not yet been tried upon said charge. To sustain this objection the state introduced the indictment against Lindley charging him as a principal in the murder of Boyd. This indictment was pending in the same court in which the trial of this case was progressing, and it was judicially known to the court that Lindley had not been tried upon and acquitted of the charge. It does not appear from the record that any question was made as to the identity of the transaction for which Lindley stood indicted, with the one for which the defendant was being tried. *Prima facie*, the indictment against Lindley, we think, showed the two transactions to be one and the same, and authorized the court to so regard them, in the absence of anything to the contrary being shown. It being thus shown that

Lindley stood indicted for the same murder for which the defendant was on trial, the court below held him to be an incompetent witness to testify in behalf of the defendant, and we think held correctly. "Persons charged as principals, accomplices or accessories, whether in the same indictment or different indictments, cannot be introduced as witnesses for one another; but they may claim a severance, and if any one or more be acquitted, or the prosecution against them be dismissed, they may testify in behalf of the others." Code Criminal Procedure, Art. 731. In order fo render a principal, accomplice or accessory incompetent to testify under the foregoing article, we do not think it is necessary that the indictment against him should show that he committed the offense together with the defendant. If he is charged, as in this case, with committing it alone, we think it is competent for the state to show *aliunde* the indictment, that the defendant was also engaged or concerned in the same act, and thus establish his incompetency to testify in behalf of the defendant.

Numerous objections are made by the defendant to the charge of the court. It is urged that it gives undue prominence to the question of express malice; that it assumes a false hypothesis, and argues, express malice from every conceivable standpoint. We have given the charge a very careful consideration with respect to all the objections urged against it. It is quite lengthy, but we are not prepared to say that it is unnecessarily so, in view of the many questions of law presented by the evidence. It is true that upon the subject of express malice it is unusually full and explicit, and is perhaps obnoxious to the criticism that it gives to that question undue prominence.

In the case of Willis & Bro. vs. McNeill, 57 Texas, 465, "it is suggested that, if a distinct legal proposition as applicable to the issues and evidence is once clearly announced in the charge, its repetition may tend to impress the jury with the belief that, in the opinion of the presiding judge, the facts demand its application in the particular case, and thus their verdict may thereby be unintentionally influenced." Among other instructions upon express malice, we find the following in the charge : "Express malice is a condition of the mind which is to be inferred from the existence of external circumstances capable of proof, such as previous difficulties, deliberate, preparation, or by any other fact or circumstances connected with or attending the killing, which satisfies the jury beyond a reasonable doubt that the accused acted from a deliberately formed design and

sedate mind." And again the charge further reads : "Express malice may be inferred by the cool, calm and circumspect deportment and bearing of a party when the act is done, or immediately prior or subsequent thereto; his apparent freedom from passion or excitement; the absence of any obvious or known cause to disturb his mind or to arouse his passions; the nature and character of the act itself; the instrument used and the manner of committing the act; the declarations of the party showing the state of his mind, and the motives and purposes with which he acts; and all the other facts and circumstances connected with the transaction are to be taken into consideration by the jury in determining the state and condition of the mind at the time to take life was formed. But, in the absence of any fact or circumstance in proof, which satisfies the jury beyond a reasonable doubt that the killing originated in, and resulted from a deliberate-formed design of a sedate mind, the killing would not be with express malice."

To the trained legal mind these clauses of the charge would be properly understood and correctly construed, and as legal propositions understood as the learned judge intended they should be, they are unobjectionable. But are they not calculated to mislead the unskilled minds of jurors;—minds not educated and trained to perceive and appreciate the nice, but at the same time often vital distinctions of the law ? Thus, they are told that express malice may be inferred from the existence of certain facts. We understand the learned judge to mean that express malice may be evidenced by external circumstances proved to exist; that is, that certain facts and circumstances having been proved to exist, we may from these infer the existence of express malice. We do not construe these clauses of the charge as dispensing with the proof of express malice, but we are not sure but that a jury might conclude therefrom that, even in the absence of any proof of express malice, they were at liberty to infer or presume its existence from the fact of the killing alone. "Malice of all kinds must be inferred, because it consists in a quality or state of the mind, either actual or implied." McCoy vs. The State 25 Tex. 41. But it can only be inferred from facts proved, and to warrant the inference of express malice there must be reasonable, satisfactory proof of external circumstances manifesting an actual and deliberate intention unlawfully to take the life of another or do him great bodily harm." The evidence of such malice which will

authorize its existence to be inferred, must arise from actual circumstances discovering that inward intention, as lying in wait; menacings antecedent, former grudges, deliberate compassings, and the like which are various according to variety of circumstances." McCoy vs. State *supra*; Jordan vs. State 10 Tex. 479. While we believe the clauses of the charge, which we have quoted, contain correct propositions of law, we think they are fairly amenable to the criticism that the jury might conclude thereupon that they might infer express malice without proof of such facts as would warrant the inference.

Another objection made to the charge is that it gives abstractly the law of murder in the second degree, and no where attempts to apply the same to the facts of the case. With reference to murder in the second degree, the charge is as follows : "If the killing is the result of a rash, hasty or inconsiderate act, done without deliberation, or if it is the result of some sudden and unexpected quarrel, without any deliberate intention to take life, the killing is with implied malice, and the offense would be murder in the second degree. When the killing is done under such circumstances as to constitute murder, but the design to kill does not originate in or result from a formed design and sedate and deliberate mind, the killing would be from implied malice, and the offense murder in the second degree." This charge was not excepted to at the trial, nor did the defendant request any special charge applying the abstract proposition of law to any particular state of facts in evidence.

Conceding that the charge is deficient in not applying the law to particular facts, it is not such a fundamental error as we would feel called upon to revise in the absence of a bill of exception, or of a special charge requested and rejected. In Hockett vs. State, 13 Tex. Ct. App. 406, it is said : "The rule upon this subject is that instructions should not be presented in the form of abstract propositions, but should be constructed upon the evidence in the particular case at bar. A state of facts should be supposed which accords with the evidence; then deduce the legal conclusiins applicable to such state of facts." This rule is also announced in O'Connell vs. State, 18 Tex. 343, and in Burrill vs. State, Id, 713, and should be observed in framing instructions to juries. We do not think that the charge upon murder in the second degree, given by the court in this case, is in full compliance with the rule above stated.

Again it is objected to the charge that it did not fully present the law of self-defense, but restricted the right to take life to too narrow a rule. We are of the opinion that the charge of the court is objectionable in the particular named. It does not instruct the jury that the defendant may have been justified, though in fact there was no actual danger of death or serious bodily harm from the attack of deceased. Homicide is justifiable when the party slain is in the act of committing an unlawful and violent attack upon the party killing, such as is calculated to produce a reasonable expectation or fear of death, or some serious bodily injury; and this is true, though it should afterwards appear that there was in fact no danger. Horbach vs. State, 43 Tex. 242; Marnoch vs. State, 7 Tex. Ct. App. 269. Defendant not only excepted to the charge because it did not present the law of self-defense fully, but he requested a special charge which presented fully, and we think correctly, the proposition above stated. We think this requested charge or a similar one, should have been given in connection with the otherwise very full and satisfactory charge of the learned judge upon the law of self-defense.

In all other respects, except in the particulars we have discussed, as far as it undertakes to explain and apply the law of the case, we think the charge of the court is correct and not obnoxious to the objections made to it.

But it is insisted that the charge should have embraced the law of manslaughter, and it was excepted to by the defendant because of its omission to do so, and special instructions presenting the law of manslaughter were requested and refused. We suppose the learned judge declined the law of manslaughter because in his opinion the evidence did not demand and authorize such a charge. Without discussing the evidence in the case, we are of the opinion that the issue of manslanghter was sufficiently raised by the facts in proof, to require the law of that grade of homicide to be given to the jury. When there is evidence which presents an issue favorable to the defendant, the trial court should not desregard it, but should accord to the accused, freely and fairly the submission of the issue to the consideration of the jury. Williams vs. State, 7 Tex. Ct. App. 396; Reed vs. State, 11 Id. 509; Green vs. State, 12 Id. 444; King vs. State, 13 Id. 277. It may be that a charge upon the law of manslaughter in this case, would not have effected the result of the trial, or it may be that, had all the rulings of the court and the charge of

the court been correct and unexceptionable, the verdict of the jury would have been the same as it is; still we must look alone to the fact that the defendant is entitled to a fair and impartial trial in accordance with the certain and fixed rules of the law, and when he has been deprived of this legal right, it does not rest within the discretion of this court to refuse him a new trial.

As the judgment must be reversed because of the errors we have specified, it is unnecessary that we should determine other questions presented in the record, as they are of a character that will not arise upon another trial of this case. The judgment is reversed and the cause remanded.